ALFRED W. RICE AND H. H. FLOYD, *Partners, &c., et al.,*
v. C. A. HODGE AND H. J. HODGE, *Partners, &c., et al.*

1. ISSUES, *When Made up and Action Triable.* While under § 315 of the code the issues must be actually made up at least ten days before the commencement of a term in order to make the action triable at that term, yet when the issues have been once fully made up by the filing of pleadings, or by failure to file them, said section has spent its force, and thereafter any change in the issues caused by the filing of new or amended pleadings by leave of the court or consent of the parties does not, by reason of said section, necessarily cause a delay of the trial.

2. REVIVOR OF ACTION; *Administrator a Party; No Error, When.* When revivor of an action in the name of an administrator is proper, it should be revived in the name of the administrator appointed by the probate court, and this notwithstanding such administrator may be a party to the action, and has an interest adverse to that of the estate; and when in such a case the revivor was so made, and a disinterested attorney appointed by the court to look after the interests of the estate in that action, *held,* no error.

3. —————— *Discretion of Court.* When in one action several liens are sought to be foreclosed on the same property, *held,* that it is discretionary with the court whether to permit a separate trial of the several issues raised by these various claims, or to try them all together.

4. JURY TRIAL, *Waiver of.* When parties have once waived a trial by jury and the court has set the case down for trial among the court cases and discharged the jury, *held,* that such waiver concludes the parties for that entire term at least, and they may not, when the case is called for trial, require a jury or a postponement.

5. MECHANICS' LIEN; *Evidence; Finding Sustained.* While it is undoubtedly true, that in order to sustain a mechanics' lien for materials it must appear, not only that the materials were purchased to be used in the building, but also that they were in fact so used, yet when it is satisfactorily shown that the materials were sold to be used in such building, that they were delivered to the builder, and that the building was actually built, and when there is testimony showing that some of the materials were actually used in the construction of the building, and there is nothing even raising a suspicion that the materials after having been delivered for the purpose were used elsewhere by the builder, or that an unnecessary amount of material was purchased for such a building, *held,* that a finding of the trial court sustaining the lien will not be disturbed although it was not affirmatively and specifically shown as to each article that it went into the building.

6. ACCOUNT BOOK, *Made from Blotter, Properly in Evidence.* A merchants' account book was offered in evidence; it appeared that the memorandum of sales was made as they took place on a little pass-book or blotter, that at the close of each day, or at most with a delay of but a day or two, these memoranda were copied into the journal or account book offered in evidence; it also appeared that these pass books or blotters had been lost or destroyed, and the party who made the copies in the account book testified that they were correct. *Held,* No error in admitting such book of account.

*Error from Dickinson District Court.*

ACTION brought by *P. A. Smith* and *J. P. Merrill,* partners as P. A. Smith & Co., against *C. A. Simpson, B. Simpson, A. W. Rice* and *H. H. Floyd,* partners as Rice & Floyd, *E. Gove, C. A. Hodge* and *H. J. Hodge,* partners as Hodge Bros., and *J. G. Northcraft,* to foreclose a mechanics' lien upon lots 10, 11 and 12, in block 20, on Buckeye avenue, in Kinney & Hodge's addition to the city of Abilene. Trial by the court at the adjourned September Term, 1880, when the court made certain findings of fact, and thereon adjudged that —

"The plaintiffs, P. A. Smith & Co., do have and recover of and against the estate of the said C. A. Simpson the sum of $330.46, and their costs herein expended; that the defendant J. G. Northcraft do have and recover of and against the estate of the said C. A. Simpson the sum of $79.19, and his costs herein expended; that the said defendants Hodge Bros. do have and recover of and against the estate of the said C. A. Simpson the sum of $411.99, and their costs herein expended; that the said defendant E. Gove do have and recover of and against the estate of the said C. A. Simpson, and from and against the defendant B. Simpson, the sum of $808.22, and his costs herein expended; and that the said judgments bear interest at 10 per cent. per annum from the date hereof until paid.

"It is further ordered and adjudged by the court, that unless the said judgments, interest and costs shall have been paid on or before the 25th day of February, 1881, that an order issue to the sheriff of Dickinson county commanding him to sell as upon execution the said lots 10, 11 and 12, in block 20, of Kinney & Hodge's addition to the city of Abilene, Dickinson county, state of Kansas, and to pay the proceeds of said sale into the court, and that the same be applied

as follows: First, to the payment of the costs herein; second, to the payment *pro rata* of the said judgments of the said P. A. Smith & Company, J. G. Northcraft, and Hodge Brothers; third, to the payment of the judgment of the said E. Gove; and that the surplus be paid to the said defendants Rice & Floyd."

The defendants *Rice & Floyd* for themselves, and defendant *E. Gove* for himself, have brought said judgments and orders here for review. Other facts are stated in the opinion.

*John H. Mahan,* for plaintiffs in error Rice & Floyd; *J. R. Burton,* for plaintiff in error E. Gove.

*McClure & Humphrey,* and *Culbertson & Mead,* for defendants in error Hodge Bros.; *Culbertson & Mead,* for defendant in error J. G. Northcraft.

The opinion of the court was delivered by

BREWER, J.: This is an action brought by P. A. Smith & Co., to foreclose a mechanics' lien on property in the town of Abilene. Several parties were made defendants, some of whom also claimed mechanics' liens, one of whom asserted a mortgage lien, and two of whom claimed a legal title to the property, and denied the validity of all the mechanics' liens. The petition was filed August 5, 1879, and the case tried on the 22d of November, 1880; and the first question presented is, whether the case was then triable. More than a year and three months intervened between the time of filing the petition and the day of trial; but nevertheless it is insisted that notwithstanding this lapse of time, the issues had not been made up for such a length of time as to entitle either party to a trial against the protest of the other. The trial was had at an adjournment of the September, 1880, term. This September term commenced on the fourth Monday of September, and the question is, whether the issues were so made up ten days before the commencement of such term as to make the case triable at that term. It appears that, while most of the defendants were served and answered in 1879, one of the defendants, E. Gove, a non-resident, was not served. On Jan-

uary 20, 1880, the plaintiffs filed affidavits for publication against said Gove. At the March term, 1880, some proceedings were had with respect to this attempted service, which may be disregarded so far as this question is concerned. But on the 3d of April, said Gove appeared and asked leave to file an answer and cross-petition, and leave was given to file the same in thirty days. In fact, Gove did not file his answer and cross-petition until the 9th of August, and then it was filed without leave of the court. On the 2d day of October, and after the commencement of the term, the plaintiffs, by leave of the court, filed a reply to this answer and cross-petition. On the 5th of October, the death of the defendant C. A. Simpson was suggested, and the action revived in the name of her administrator, and replies filed by said administrator to several of the answers and cross-petitions. Now upon these facts, was the case triable at the September term? It is insisted by counsel for plaintiffs in error that the issues were not in fact all made up ten days before the commencement of the September term, and therefore under § 315 of the code, that the case was not triable at that term. We had occasion in the case of *Gapen v. Stephenson,* 18 Kas. 140, to examine said § 315, and construe its meaning; and we held that its language referred to the time at which the issues were in fact made up. When in fact were the issues in this case made up? Obviously at the expiration of thirty days from the 3d of April, 1880, for at that time every defendant was in court, and every pleading which any party had a right to file had been filed. So far as any party had then failed to file a pleading setting forth his claims, such party being in default had waived any right to an adjudication thereof, as against the claims made by the other parties. The issues were made up, and the case was triable at any term commencing more than ten days thereafter. Sec. 315 had spent its force, and whatever subsequent change was made in the issues by consent of the parties, or by leave of the court, did not affect the question as to when the case was triable. It is no uncommon thing for pleadings to be amended, or new pleadings

filed, by consent of the parties, or by leave of the court, and thereby to some extent the issues are changed; but it is not the scope or intent of § 315 in such cases to render postponement compulsory. After a case has once become triable under said § 315, any continuance or postponement depends upon other considerations than those prescribed by said section. The books are full of cases in which amendments have been made at the very time of trial, changing more or less the scope of the issues, and continuances nevertheless refused. The question of continuance, then, is one to be decided by the necessities of doing justice to the parties, and not by any technical rule as to the time of the formation of the issues. We hold then in conclusion, that when the issues have been once made up by the filing of pleadings, or the failure to file them, the case is under said § 315 triable at any

1. Issues, when made and action triable.

term commencing more than ten days thereafter, and any subsequent change in the issues made by filing new or amended pleading by leave of the court, or consent of the parties, does not render said § 315 again operative and postponement compulsory. We must look to other sections and other rules to determine whether the trial was then improperly compelled. The court has the power to permit new pleadings or amended pleadings, and compel a trial at the same term, unless the interests of justice require a continuance. (*Taylor v. Hosick*, 13 Kas. 526; *Grant v. Pendery*, 15 Kas. 242.)

The revivor of the case in the name of the administrator of a deceased defendant, and permitting such administrator to file pleadings, does not necessarily compel a continuance. (Code, § 437.)

Application was made for continuance, on the ground of absence of the evidence of Barclay Simpson. By consent of the opposite parties, the affidavit reciting such testimony was received as a deposition, and the application properly overruled. (Code, § 317.)

The revivor was in the name of P. A. Smith, administrator. P. A. Smith was one of the plaintiffs, and it is objected

that such a revivor was erroneous. As a personal judgment was sought against the estate of C. A. Simpson, deceased, the only proper revivor was in the name of her administrator. The fact that the probate court had appointed one of the plaintiffs in this case her administrator did not justify a revivor in any other form. Inasmuch, however, as plaintiff might be supposed to have interests antagonistic to those of the estate of which he was administrator, the district court very properly appointed a special attorney to take charge of the interests of the estate in this case. In this proceeding there was no error. Further, even if the court erred, we do not see how the plaintiffs in error were prejudiced, or what right they have to complain.

2. Revivor of action; administrator a party; no error, when.

As this case was tried by the court without a jury, we see no special necessity or advantage of a separate trial of the issues involved, and therefore no abuse of discretion on the part of the court in refusing such separate trials. (Code, § 268.)

3. Discretion of court.

The record shows that the parties waived a trial by jury. This was done in response to an interrogation of the court when arranging the docket for court and jury cases. Such a waiving when made by the parties is good at least for the entire term. Notwithstanding the criticism of counsel upon the language of the record, we think it shows distinctly and clearly that a jury was waived; that the case was set down as a court case to be tried after the jury had been discharged; that in pursuance thereof the jury was discharged, and then the case called among the court cases for trial. It was then too late for the parties to insist upon the calling of a jury, or any postponement of the trial for lack of a jury. These are all the questions raised by counsel as to matters preliminary to the trial. In those no error is apparent, and we proceed to a consideration of the questions involved in the trial itself. And here counsel present three or four questions: First, the mechanic's liens sued on in this case were for materials claimed to have been furnished for and used in the construction of the buildings on the premises, and

4. Jury trial, waiver of.

the contention is, that it is not shown that such materials actually went into such buildings. It is undoubtedly true, that it is not affirmatively and specifically shown that each separate article charged in these bills actually went into such buildings. It does appear, however, that each one of the three separate claimants made contracts for furnishing materials for said buildings; that in pursuance of said contracts they furnished materials, and supposed that they were to be used in the construction of said buildings; and as to a few articles, that they did in fact go into said buildings. To this there is no contradictory testimony; nothing tending to show that any of the materials so delivered were in fact taken away by the builder and used elsewhere; nothing even tending to raise a suspicion that there was any deviation of materials from their intended and contracted use. Under these circumstances, it would not be justice to refuse the lien. To require

5. Mechanics' lien; evidence; finding sustained.

direct and positive testimony, that as to each specific article delivered, that it was in fact used in the buildings, would make the mechanics'-lien law more of a burden and a trap than a blessing and a help. When materials are contracted for use in a proposed building, when they are delivered in pursuance of such contract, and when the building is in fact completed, and there is no testimony tending to raise even a suspicion that the materials therefor were elsewhere obtained, or that those contracted for were not used therein, and especially when some of the materials are shown to have actually entered into its construction, it is fair to conclude and say that such materials did in fact go into the building, and that the seller has a mechanics' lien therefor.

Of course, cases may arise where more stringent proof is required, as, if for any reason there should be a fair and well-grounded suspicion that the contractor had used the materials purchased for some other building, or for some other purpose. If for instance it should appear that more materials were furnished than were in fact used in the building, then it might be fair that the sellers should be able to show specifically that

the materials they sold were in fact those which entered into the building, so that the owner should be charged with the cost only of that of which he actually received the benefit. But this is no such case. Here the builder comes to material-men, purchases his materials for the purpose of erecting a certain house, the material is delivered, the house is built, and two years thereafter trial is had of a foreclosure of liens therefor. On such trial, when the proof is satisfactory of the contracts for material, their delivery, the building of the house, and no intimation of a purchase of materials elsewhere, or that unnecessary amounts were purchased, it will take but very slight testimony to sustain a general finding of the court upholding such liens.

It is objected that the account books of the respective lien claimants were improperly received in evidence. The evidence of these books of account seems to have been brought clearly within § 387 of the code of civil procedure. The only one in respect to which there could be any doubt, was that of J. G. Northcraft, and the objection to this is, that it was not a book of general entries. It appears that the first entries of sales were made in a little pass-book, or blotter, and from that copied into the journal which was offered in evidence. These copies were generally made at the close of each day, though one of the witnesses says there was sometimes a delay of a day or two before they were transcribed. These original pass-books had been lost or destroyed, and the journal was admitted as evidence. We do not think the court erred in admitting this evidence.

6. Account book made from blotter, properly in evidence.

It is objected that the statements for lien were not filed in time; that they do not correctly describe the owner of the property; and also that the claimants, being sub-contractors, did not furnish copies of the statements to the owner or agent of the premises, as required by § 631 of the code. None of these objections can be sustained. There were no special findings of facts made by the court, so that if there was any testimony

upon which the general finding could be sustained it must be adjudged sufficient. It is not clear when the building was completed, but there was testimony of work being done in July and August, 1879, and if that be taken as the time of the completion of the building the statements were all filed in due time. It is possible that that work may not have been properly work done in the completion of the building, but extra work done thereafter at the instance of the owner; and yet it is also possible that that work was a part and parcel of what was necessary to properly complete the building. We cannot ignore that testimony, there being no special finding of facts, or hold that the building was completed in the spring, as testified to by some parties. The title seems to have been somewhat mixed. The legal and equitable title did not go hand in hand; still we think the testimony sustains the validity of these liens, both as to the time of filing, the facts stated in them, as well as to the service of copy, if service was necessary.

In conclusion, we may say that the record is voluminous; a large amount of testimony was given, and the questions of fact presented are not altogether clear. There is enough, however, to show that the materials were furnished ; that they went into the building; that the present owners, whoever they may be, are enjoying the benefit thereof; and that there was no such error in the lien proceedings as to invalidate them.

Justice evidently is done by upholding the judgment of the district court, and it must therefore be affirmed.

All the Justices concurring.