No. 44,459

Seyb-Tucker Lumber and Implement Company, *Appellee* and *Cross Appellant*, v. Paul F. Hartley and Myrtle E. Hartley, his wife, et al. (Defendants); Johnson Co-operative Grain Co., a Kansas Corporation; Southwestern Savings and Loan Association of Hugoton, Hugoton, Kansas, *Appellants* and *Cross Appellees*.

(415 P. 2d 217)

June 11, 1966. Opinion filed

*Leland E. Nordling,* of Johnson, and *Paul A. Wolf,* of Hugoton, argued the cause, and *J. S. Brollier,* of Hugoton, was with them on the brief for the appellants and cross appellees.

*LaVerne Fiss,* of Johnson, argued the cause, and *Max L. Dice,* of Johnson, was with him on the brief for the appellee and cross appellant.

The opinion of the court was delivered by

Harman, C.: This appeal concerns the validity of a mechanic's lien in which determination the dates of certain occurrences become important.

On September 10, 1963, plaintiff filed its lien statement covering certain lots in the city of Johnson in Stanton County, the record title to which was in the name of Myrtle E. Hartley, wife of Paul F. Hartley. The lien claimed was for materials furnished for the construction of a house on said lots. The lien statement recited that materials were first furnished on February 23, 1963, and last furnished on May 16, 1963. On September 4, 1964, plaintiff filed this action to foreclose its mechanic's lien, naming as defendants Paul F. Hartley and Myrtle E. Hartley, and obtaining personal service upon them. At this point it may be said the Hartleys have defaulted throughout in this action. On September 11, 1964, plaintiff filed its amended petition again naming the Hartleys as well as appellants and others as defendants. Appellant Southwestern Savings and Loan Association of Hugoton filed an answer denying that any material was furnished by plaintiff after May 3, 1963, and that, therefore, the lien statement was filed more than four months after the last material was furnished. It also alleged that a gallon of turpentine which plaintiff recited in its lien statement was sold to defendant Paul F. Hartley on May 16, 1963, was never sold and delivered to him, and further that if sold, it was never used on the property in question. In its cross-petition the appellant loan association alleged it was the record owner of a mortgage on the property executed by the Hartleys April 12, 1963, and it sought foreclosure of this mortgage as a first and prior lien on the property.

The appellant Johnson Co-operative Grain Company filed an answer also raising the issue as to when plaintiff last furnished material in support of its lien, and further alleging that it had an unsatisfied personal judgment against Paul F. Hartley obtained February 24, 1964, and it alleged in its cross-petition that the real estate in question was purchased by defendant Paul F. Hartley but that record title was taken in the name of defendant Myrtle E. Hartley, his wife, for the purpose of hindering and delaying Paul F. Hartley's creditors and putting the property beyond their reach, and it asked that the conveyance of the property to Myrtle be reformed to insert the name of Paul F. Hartley and that its judgment against him be declared a lien upon the real property.

Trial to the court resulted in findings of fact, which will be alluded to further, and entry of judgment foreclosing plaintiff's mechanic's lien as a first and prior lien against the property. The court computed the amounts due under the appellant loan asso-

ciation and the appellant grain company's claims and decreed them
to be second and third liens, respectively, on the property, the court
adjudged other succeeding liens, and further ordered that the deed
conveying the property to Myrtle E. Hartley should be reformed to
show the grantee to be Paul Hartley.

. . . . . . . . . . . . .

Appellants bring the case here for review and plaintiff, herein-
after referred to as appellee, has filed a cross-appeal from the order
reforming the deed.

We will notice first the timeliness of the filing of the lien state-
ment under the evidence. Attached to the lien statement filed by
appellee in the office of the clerk of the district court is what is
termed exhibit "A" which contains 232 items claimed to be fur-
nished for the construction of the house, together with the date, cost
and ticket number for each item. The last seven items and the total
listed in this exhibit are as follows:

| "Ticket No. | Date 1963 | | Cost |
|-------------|-----------|---|------|
| . . . | . . | . . . . . . . . . . . | . . |
| 41 | 5/3 | 1 1/12 x 16 No. 3 at 13 .............. 2.08 | |
| | | 1 1/12 x 12 No. 3 at 13 .............. 1.56 | |
| | | —— | 3.64 |
| 25 | 5/3 | 1 1/12 x 6 ft. No. 3 ................... | .72 |
| 1 | 5/3 | 1 model 100 14 x 20 Medicine Cabinet ....11.50 | |
| | | 1 3" bent cap ........................ 1.90 | |
| | | 1 qt. Old American Fibre Cement ........ .50 | |
| | | —— | 13.90 |
| 22 | 5/16 | 1 Gal. Turpentine .................... | 1.30 |
| | Total | ........................................ | $4,854.79 |
| | Tax | ........................................ | 121.39 |
| | Total Due | ................................... | $4,976.16" |

The statement further showed that two gallons of paint thinner
were charged to Paul Hartley, one on March 23, 1963, and the other
on April 12, 1963.

Keeping in mind that the lien statement must be filed within
four months after the date upon which material was last furnished
(G. S. 1949, 60-1402), it will readily be seen that the validity of
the lien depends upon the disputed gallon of turpentine sold on
May 16, 1963, inasmuch as all of the other materials which are not
disputed were sold more than four months prior to September 10,
1963, the date of the filing of the lien statement.

The only evidence offered by appellee at the trial was the testimony of its former employee that he made the sale described in the last sales ticket and that identifying marks thereon indicated that the material was purchased for the purpose of being used on house No. 2. The ticket itself was received in evidence. The witness further testified that normal procedure for identifying the site on which the material would be used was by asking the purchaser, unless the material was delivered to the site by the clerks; that he was sure the purchaser, Paul Hartley, had told him which house the materials described in the sales ticket in question were to be used but that he did not have any actual present knowledge of the transaction and his testimony was based on what the ticket showed, which ticket he wrote.

For the appellant loan association the defendant Paul F. Hartley was called under subpoena as a witness and he testified he had no recollection of purchasing the turpentine but that if he did it would have been used on some other job; that the types of paints and varnishes used on house No. 2 did not require the use of turpentine and none was used at any time in the construction of house No. 2. It was further shown that Hartley had previously told a representative of the loan association he had never purchased any turpentine. Defendant's son, Ernest Hartley, testified he helped his father build house No. 2; that he knew no turpentine was used in it; that paint brushes were cleaned with water on the inside of the house and with gasoline on the outside; that by May 7, 1963, all the painting was finished, and by May 16, 1963, the house was finished. Upon this evidence the trial court specifically found that "the disputed turpentine was not used in House No. 2 but that the plaintiff had no reason to know this or to make an investigation thereto." The trial court upheld the lien because the material was of a type which could be used for many purposes and was sold in due course of business to one who occupied the dual capacity of both builder and owner.

In brief, then, we have this situation: The gallon of turpentine was sold to the owner (or the spouse of the owner) by the supplier presumably for use in construction of the house but actually it was never so used. What disposition was made of it, we do not know. Being a consumable item not identifiable when used one could only speculate. Is this a basis for a lien? G. S. 1949, 60-1401, in force

at the time the lien statement was filed and when the lien, if any, must be held to vest, provided in pertinent part:

"Any person who shall under a contract with the owner of any tract, or piece of land, or with a trustee, agent, husband or wife of such owner . . . furnish material for the erection . . . of any building . . . thereon . . . shall have a lien upon the whole of said piece or tract of land, the building and appurtenances, in the manner herein provided, for the amount due to him for such . . . material. . . ."

This court has construed this statute many times with respect to use of the material furnished. In *Hill v. Bowers*, 45 Kan. 592, 26 Pac. 13, the action was one to foreclose a lien upon real estate for iron fencing, gates and posts claimed to be furnished the owner for use thereon. At the trial it was proven that the material was never used on the land in question. This court denied the lien for the reason the material was never attached to and made a part of the land, the rule of law applied being stated in the syllabus as follows:

"To entitle a person to a lien upon land for material furnished for fencing, it must appear not only that such material was purchased to be used for that purpose, but it must also appear that the same was in fact so used as to become a part of the realty."

In *McGarry v. Averill*, 50 Kan. 362, 31 Pac. 1082, the plaintiff vendor proved that he had sold material to be used in a building and that the material was delivered to the lot where the building was being constructed. The defendant attempted to show that the materials so delivered were not used in the actual construction, which testimony the trial court refused to admit. This court reversed the trial court's judgment sustaining a lien because of exclusion of this testimony saying:

"It is not enough that the material was sold to the contractor with the design that it should be used in the construction of the building, but it must in fact be used in the building before a lien will attach or the owner can be charged for the material furnished." (p. 364.)

The rule expressed in the foregoing cases was reiterated in *Sash & Sales Co. v. Early et al.*, 117 Kan. 425, 232 Pac. 232, as follows:

"It has been determined that under the statute providing for liens, no lien can be allowed for material purchased for a building on the land of the owner unless it in fact goes into the building and becomes a part of the realty." (p. 427.)

The same rule was followed in *Badger Lumber & Coal Co. v. Schmidt*, 122 Kan. 48, 251 Pac. 196. Thus we have clearly established the doctrine that materials must not merely be furnished for,

or delivered to the site of, the particular building, but must also actually be used in its construction in order to sustain a mechanic's lien. The simple reason for this is that property should not be burdened with a lien to secure the price of materials which never entered into its construction or improvement. Cases from other jurisdictions supporting this view under similar statutes may be found in the annotation at 39 A. L. R. 2d 418 III § 6 [a].

While not of moment here we note this construction of our old statute has now been embodied in our present act providing for mechanic's lien by the inclusion therein of the specific language "used or consumed for the improvement of real property" in speaking of material or supplies (K. S. A. 60-1101).

Appellee, in support of the trial court's ruling, urges what has come to be known as the rule of presumptive use, that is, that proof of delivery of the materials to the building site constitutes *prima facie* evidence, or creates a presumption, of their use in the improvement (see annotation on this point at 39 A. L. R. 2d 427 B, § 9 [a]). Indeed this court has recognized and applied such a rule, the leading case thereon being *Rice & Floyd v. Hodge Bros.*, 26 Kan. 164, upon which case the trial court relied heavily in deciding the instant case. In *Rice & Floyd*, in sustaining a mechanic's lien against the contention it was not shown that the material actually went into the buildings, this court stated:

"It is undoubtedly true, that it is not affirmatively and specifically shown that each separate article charged in these bills actually went into such buildings. It does appear, however, that each one of the three separate claimants made contracts for furnishing materials for said buildings; that in pursuance of said contracts they furnished materials, and supposed that they were to be used in the construction of said buildings; and as to a few articles, that they did in fact go into said buildings. To this there is no contradictory testimony; nothing tending to show that any of the materials so delivered were in fact taken away by the builder and used elsewhere; nothing even tending to raise a suspicion that there was any deviation of materials from their intended and contracted use. Under these circumstances, it would not be justice to refuse the lien. To require direct and positive testimony, that as to each specific article delivered, that it was in fact used in the buildings, would make the mechanics'-lien law more of a burden and a trap than a blessing and a help. When materials are contracted for use in a proposed building, when they are delivered in pursuance of such contract, and when the building is in fact completed, and there is no testimony tending to raise even a suspicion that the materials therefor were elsewhere obtained, or that those contracted for were not used therein, and especially when some of the materials are shown to have

actually entered into its construction, it is fair to conclude and say that such materials did in fact go into the building, and that the seller has a mechanics' lien therefor.

"Of course, cases may arise where more stringent proof is required, as, if for any reason there should be a fair and well-grounded suspicion that the contractor had used the materials purchased for some other building, or for some other purpose. If for instance it should appear that more materials were furnished than were in fact used in the building, then it might be fair that the sellers should be able to show specifically that the materials they sold were in fact those which entered into the building, so that the owner should be charged with the cost only of that of which he actually received the benefit. But this is no such case." (pp. 170, 171.)

The rule enunciated in *Rice & Floyd* was restated in *David v. Doughty*, 96 Kan. 556, 152 Pac. 660, as follows:

"To entitle a person to a lien for material furnished in the erection of a building it devolves on the claimant to show that the material was purchased for and applied to that use, but if it be shown that the material was purchased to be used in the building and delivered to the builder, or taken by him to his premises to be so used, and some evidence is offered that material of that character was actually used in the building, *in the absence of any discrediting circumstances* it will ordinarily be sufficient to show that the material was used in the building." (Our emphasis.) (Syl.)

Thus it is seen the rule does not establish a conclusive presumption of use and that evidence may be shown to the contrary. Here such evidence was introduced rebutting the presumption and the trial court made a specific finding of fact that the questioned material was not used. Hence the rule of presumptive use was overcome and could not properly prevail, and the court erred in applying it in the light of its specific finding.

We are asked to apply a different rule where material is supplied directly to an owner rather than through a third party contractor or builder. A mechanic's lien is a creature of statute which is to be strictly construed (*Logan-Moore Lumber Co. v. Black*, 185 Kan. 644, 347 P. 2d 438). No such distinction is made in the statute, and our previous cases have made none where the owner has been furnished the material (see, for example, *Hill v. Bowers*, supra).

Since the gallon of turpentine was not a lienable item under the circumstances, its furnishing did not operate to extend the time in which a lien could be perfected, hence the lien statement was filed more than four months after the date upon which material was last furnished, and the claimed lien cannot attach.

It also appears under the evidence that by the time the turpentine was furnished the house had been completed, and therefore the

situation approaches that in *Star Lumber & Supply Co. v. Mills,* 186 Kan. 204, 349 P. 2d 892, wherein it was held that two small isolated orders for materials furnished after a house was completed did not operate to extend the time in which a lien for material used in construction could be perfected. However, we do not base our decision herein upon the ruling made in the *Star Lumber* case but rather upon the specific finding of non-use as indicated.

In view of the conclusion reached on the above point it is unnecessary to consider the contention of appellants that as to them the action to foreclose was not timely filed.

Appellee has cross-appealed from the court's order that the deed conveying the property to Myrtle E. Hartley should be reformed to show the grantee to be Paul Hartley, because of insufficiency of evidence. The deed in question was dated February 21, 1963. The only evidence concerning the deed offered by cross-appellee grain company, which sought the reformation, was testimony by Hartley that the deed was originally made out in the name of Paul Hartley and then, with her consent, changed to Myrtle Hartley "in order to avoid obtaining a Waiver from Titan Builders to get a loan from Southwestern Savings and Loan Association;" that he did not remember whether the contract was originally made out in the name of Myrtle or Paul Hartley; that title was taken in Myrtle's name so there would be no difficulty in obtaining a loan upon it; that no consideration passed between Myrtle and Paul, and that the sole purpose of placing the property in Myrtle's name was so they could draw some money on it without Titan Builders interfering. The trial court further permitted the defendant Paul Hartley to make the following statement in open court:

"I did not put the property in my wife's name to defraud anybody. I didn't owe Murphy (Titan) any money. He just filed against me for one purpose and that was to outlaw the $1,380.00 he owed me."

It further appears that Paul Hartley executed a promissory note to cross-appellee grain company on March 6, 1963 (evidently to satisfy an open account) and thereafter cross-appellee took judgment thereon against Hartley on February 24, 1964. Based on the foregoing the trial court ordered the deed reformed as indicated. We agree with cross-appellant that the evidence was insufficient to authorize such reformation and that the trial court erred in ordering it. There was no evidence of intent to defraud or to delay or hinder nor any evidence of intent to place the property beyond

the reach of the grain company whose judgment against Hartley was rendered more than a year after the execution of the challenged deed. So far as the grain company is concerned, Hartley's action is just as consistent with good faith as with bad, nor can any inference to the contrary be drawn from anything in the record (cf. *Jayhawk Equipment Co. v. Mentzer*, 193 Kan. 505, 394 P. 2d 37).

The orders of the trial court upon appeal and cross-appeal are reversed for further proceedings in accordance with the views herein expressed.

APPROVED BY THE COURT.