No. 47,202

Geis Irrigation Company of Kansas, Inc., a Kansas Corporation, *Appellee*, v. Satanta Feed Yards, Inc., Harold Daniels, d/b/a Satanta Feed Yards, Irene M. Daniels, *Appellants*. (Builders Service, Inc., a Kansas Corporation; Davis, Inc., a Kansas Corporation; Star Lumber Company, a Kansas Corporation; Smith Sand Company, Inc., a Kansas Corporation; Don Dubois d/b/a Dubois Sand Company; Russell G. Johnson, d/b/a Johnson Rat Hole Drilling; Harper Steel Construction Company, a Kansas Corporation, and William C. Harper, d/b/a Harper Steel Construction Company, *Defendants*.)

(521 P. 2d 272)

Opinion filed April 6, 1974.

*Thomas Richardson*, of Light, Yoxall, Antrim & Richardson, of Liberal, argued the cause, and *Stanley E. Antrim*, of the same firm, was with him on the brief for appellants.

*Arthur B. McKinley,* of Sublette, argued the cause for appellee Geis Irrigation Company of Kansas, Inc., and defendants Davis, Inc., Star Lumber Company and Smith Sand Company, Inc., and *D. O. Concannon,* of Hugoton, was with him on the brief for defendant Star Lumber Co. *Ward E. Loyd,* of Calihan, Green, Calihan and Loyd, of Garden City, was on the brief for defendant Smith Sand Company.

*Jeff Johnson,* of Hugoton, argued the cause, and *Paul Wolf,* of Brollier and Wolf, of Hugoton, was with him on the brief for defendant Builders Service, Inc.

*Chester A. Nordling,* of Vance, Hobble, Neubauer, Nordling and Sharp, of Liberal, was on the brief for defendant Johnson Rat Hole Drilling.

The opinion of the court was delivered by

FATZER, C. J.: This is an appeal from a judgment foreclosing mechanics' liens and entering personal judgments against individuals. The basic facts are not in dispute.

On February 18, 1970, the Satanta Feed Yards, Inc., acting through its president, Harold Daniels, entered into a contract with Harper Steel Construction Company for the construction of tanks and hoppers for feeding cattle on its premises. The contract price was $12,999.97. Following the execution of the principal construction contract, Harper Steel Construction Company entered into contracts with six subcontractors for the performance of services and the furnishing of materials and equipment. The labor was alleged to have been performed and the material furnished during the seven-month period following the execution of the principal contract.

In August 1970, Harper Steel Construction Company defaulted on the principal contract after receiving two payments of $3,249.99 each. The last payment was made by Satanta Feed Yards, Inc., on June 5, 1970. Shortly thereafter Harper Steel Construction Company was placed in voluntary bankruptcy and the claimants in this action received notice thereof. The claimants then proceeded to convert their claims into statutory mechanics' liens. The bankruptcy proceedings were completed and the principal contractor discharged.

On February 11, 1971, one of the claimants, Geis Irrigation Company of Kansas, Inc., brought an action to foreclose its mechanic's lien against Satanta Feed Yards, Inc.; Harold Daniels, d/b/a Satanta Feed Yards, Inc.; Irene M. Daniels; Harper Steel Construction Company, and William C. Harper, d/b/a Harper Steel Construction Company. Five other lien claimants were also made parties. They are listed for the purpose of future reference,

if necessary, as follows: Builders Service, Inc., rented crane and operator; Smith Sand Company, Inc., furnished crane and operator; Davis, Inc., furnished ready-mix concrete; Russell G. Johnson, d/b/a Johnson Rat Hole Drilling, dug a hole 38 feet by ten feet in connection with the construction, and Star Lumber Company delivered supplies and ready-mix concrete. We here note the plaintiff, Geis Irrigation Company of Kansas, Inc., furnished steel pipe "I" beams, rebar, and wire mesh.

The controversy was tried by the district court and it found generally in favor of the statutory lien claimants. One of the claimants, Don Dubois, d/b/a Dubois Sand Company, did not answer.

The journal entry of judgment reads in part:

". . . and that the following named lien claimants be and they are hereby given judgment against Harold Daniels and Irene Daniels, Harold Daniels d/b/a Satanta Feed Yard and Satanta Feed Yards, Inc., in the amounts set opposite each, to-wit: . . ."

There followed the names of the six lien claimants with the amount of their claims. The journal entry of judgment concluded:

"And that in the event the judgment hereinabove rendered is not paid within 30 days from the date hereof, an Order issue to the Sheriff of Haskell County, Kansas, commanding him to sell said premises as upon execution, and to return the proceeds thereof into this Court for application to satisfaction of the costs of this action and the judgments heretofore rendered, all upon confirmation of said sale."

Satanta Feed Yards, Inc., Harold Daniels and Irene Daniels have appealed. The appellants' statement of points raise sixteen specified errors, however, many of them are duplications as the same error relates to numerous lien claimants. The numerous alleged errors are considered as a class to avoid repetition.

The appellants first contend the district court erred in rendering judgment against them because the discharge in bankruptcy of the principal contractor precludes enforcement by the subcontractors of their lien rights against the improved property. The point is not well taken.

The general purpose of the mechanic's lien statute is to protect labor and materialmen. It is when the principal contractor is bankrupt or unable to pay that labor and materialmen need the protection of the statute.

In 9 Am. Jur. 2d, Bankruptcy, § 764, p. 570, we find the following statement:

". . . When it comes to the matter of bankruptcy of the principal contractor for the work in connection with which the lien claims arise, however, a different aspect is presented. The principal contractor is the person primarily liable for payment of subcontractors, materialmen, and laborers, whose lien rights in case of nonpayment are in the nature of secondary security. For this reason, some authority can be found to the effect that discharge in bankruptcy of the principal contractor precludes enforcement, by subcontractors, materialmen, and laborers, of lien rights against the improved property, if the property owner is precluded by the principal contractor's discharge from shifting the burden back where it belongs. *In the light of the purpose of mechanic's lien laws to protect laborers and materialmen against any such result, however, the more generally accepted view is that discharge in bankruptcy of the principal contractor is no bar to assertion and enforcement of their lien rights against the improved property. . . .*" (Emphasis supplied.)

The view that the discharge in bankruptcy of the principal contractor is no bar to the enforcement of subcontractors' statutory lien rights, is in harmony with the purpose of our mechanic's lien statute. (K. S. A. 1973 Supp. 60-1103.)

Although this court has not ruled on a question exactly in point, it did, in *Manufacturing Co. v. Casualty Co.*, 114 Kan. 151, 217 Pac. 282, quote with approval the syllabus in an Oklahoma case, which reads:

" 'Where on the construction of a building the principal contractor becomes a bankrupt, and the owner requests or consents to an order of the bankruptcy court directing the receiver or trustee of such contractor to complete his contract, and such order is made, the mere fact of bankruptcy of the original contractor will not preclude recovery against the owner, or the enforcement of a lien against the property for services rendered or materials furnished within the scope of the contract.' [*Eberle et al. v. Drennan et al.*, 40 Okla. 59, Syl. ¶ 10." (l.c. 154, 155.)

Those wishing to pursue the two theories further should see 98 A. L. R. 329.

The appellants next contend the district court erred in granting judgment against the defendants Harold Daniels and Irene M. Daniels personally, since all of the claims are in rem against specific property. The point is well taken.

The record shows Irene M. Daniels had no part in the transaction other than as a stockholder in Satanta Feed Yards, Inc. In fact, counsel for appellees conceded in oral argument there was no basis for a personal judgment against her. Neither do we find any basis for a personal judgment against Harold Daniels. It was determined in *Sash Co. v. Heiman*, 71 Kan. 43, 49, 80 Pac. 16, that a subcontractor seeking the foreclosure of a mechanic's lien could not recover

a personal judgment against the owner of the improved property. Here, Harold Daniels was not the owner. At best, he was only a stockholder, president and general manager of Satanta Feed Yards, Inc., which was the record owner of the premises.

In their joint brief, three of the claimants rely on an oral promise made to Ben Davis, of Davis, Inc. Davis testified he informed Harold Daniels he (Davis) was concerned about Harper's paying methods and Daniels said, "he would see things were taken care of."

The promise, if made as a promise to pay, was barred by the statute of frauds as it was in the form of a guaranty. In *Walton v. Piqua State Bank*, 204 Kan. 741, 466 P. 2d 316, this court held:

"A guaranty is a collateral undertaking by one person to answer for the payment of a debt or the performance of some contract or duty in case of default of another person who is liable for such payment or performance in the first instance.

"The fact that one who has made a loan of funds does not assert a claim against a third person until he has failed to receive payment from the person who was principally obligated, indicates that the third person was not looked to primarily for payment and that whatever promise he made for payment is within the statute of frauds as a collateral obligation.

"The fact that the guarantor-promisor derives some personal benefit from a transaction is insufficient to remove his promise from the statute of frauds.

"If the statute of frauds is held to apply only where a promisor guarantees the debt of another in a transaction in which the promisor is completely uninterested, the statute is effectively destroyed. Completely uninterested persons do not guarantee the debts of others.

"It is the duty of one who contends an oral promise is outside the statute of frauds to show or establish facts taking the promise out of the statute." (¶¶ 3, 4, 5, 6 & 7.)

Also, the promise, even if valid, was made for none other than Ben Davis and formed no basis for a personal judgment in favor of all claimants. There is nothing in the record to support a personal judgment against either of the Daniels.

The appellants contend the district court erred in granting judgment in favor of Geis Irrigation Company of Kansas, Inc., since it was estopped from enforcing the mechanic's lien because of its action in making a notation on an invoice statement, "paid by check No. 2056. . . ."

Without going into the many ramifications of the testimony on this question, it is sufficient to state that estoppel is an affirmative defense and it must be set forth affirmatively. (K. S. A. 60-208 [c].) The appellants failed to plead estoppel as a defense. In *North*

*River Ins. Co. v. Aetna Finance Co.,* 186 Kan. 758, 352 P. 2d 1060, we held:

"The defense of change of position asserted by a defendant amounts to a plea of estoppel *in pais,* and is an affirmative defense which must be pleaded and proved by the defendant." (Syl. ¶ 3.)

The appellants contend the district court erroneously allowed mileage or travel time under the mechanic's lien. The statute ( K. S. A. 1973 Supp. 60-1101) provides for such allowance, and reads in part:

"Any person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property, under a contract with the owner or with the trustee, agent or spouse of the owner, shall have a lien upon the property for the labor, equipment, material or supplies furnished, and for the cost of transporting the same, and the lien shall be preferred to all other liens or encumbrances which are subsequent to the commencement of the furnishing of such labor, equipment, material or supplies at the site of the property subject to the lien. . . ."

Certainly the cost of delivering materials and supplies to the construction site is cost of transportation. The foregoing provision is made applicable to subcontractors by K. S. A. 1973 Supp. 60-1103, which stated:

"(*a*) *Procedure.* Any subcontractor or other person furnishing labor, equipment, material or supplies, used or consumed at the site of the property subject to the lien, under an agreement with the contractor, or a subcontractor of the contractor, may obtain a lien for the amount due in the same manner and to the same extent as the original contractor. . . ."

The appellants object to the allowance of the liens for the reason the statutory notice was not properly given. They assert the notices were not sent by restricted registered or certified mail properly carrying the phrase "deliver to addressee only." They refer to K. S. A. 60-103 for the definition of restricted mail. The difficulty with the appellants' argument is the fact the statute was amended in 1970 ( effective July 1) by the addition of the following exception:

". . . except that mail on which the addressee is not a natural person or persons the endorsement 'deliver to addressee only' may be omitted."

The principal contractor and Satanta Feed Yards, Inc., are corporations, hence, not being natural persons, the endorsement was unnecessary. The case of *Schwaller Lumber Co., Inc. v. Watson,* 211 Kan. 141, 505 P. 2d 640, dealt with notice to natural persons and has no application to the point before us.

Two of the claimants did not attempt to make service by regis-

tered or certified mail, but personal service of notice was made by the attorneys for the claimants. The statute covering service, K. S. A. 1973 Supp. 60-1103, provides in part:

". . . The claimant shall either cause a copy of the lien statement to be served personally upon the owner . . . or shall mail a copy of the lien statement to the owner of the property. . . ."

The appellants challenge the sufficiency of the personal service. The record contains ample evidence to support the district court's findings that proper personal service was made. It would serve no useful purpose to review that evidence and extend this opinion.

The appellants argue with considerable force there was not sufficient proof that the material and supplies furnished found their way into the building. Again, this is a question of fact for the determination of the district court. It found the material and supplies in question were delivered and placed at the building site. There was substantial evidence to support the finding. With respect to the enforcement of a mechanic's lien, this state follows the rule of presumptive use where material is delivered to the building site. In *Seyb-Tucker Lumber and Implement Co. v. Hartley,* 197 Kan. 58, 415 P. 2d 217, we held:

"The rule of presumptive use in connection with a mechanic's lien, that is, that proof of delivery of material to a building site constitutes *prima facie* evidence, or creates a presumption, of use of the material in the construction or improvement of the building, has been recognized and applied in Kansas, but such rule does not establish a conclusive presumption of use, the presumption being rebuttable, and evidence to the contrary may be shown." (Syl. ¶ 2.)

Although there was some conflicting evidence, it was for the district court to resolve the question.

A careful examination of the record discloses no trial errors which would justify the granting of a new trial. The judgment is reversed insofar as it purports to grant a personal judgment against Harold Daniels and Irene M. Daniels, and affirmed in all other respects.

It is so ordered.

FROMME, J., not participating.