No. 72,004

HAZ-MAT RESPONSE, INC., *Appellant,* v. CERTIFIED WASTE SERVICES LIMITED; CHIEF SUPPLY CORPORATION; COASTAL REFINING & MARKETING, INC.; AND CIC INDUSTRIES, *Appellees.*

(910 P.2d 839)

Opinion filed February 2, 1996.

*Robert M. Thompson*, of Bryan Cave, of Kansas City, Missouri, argued the cause and was on the briefs for appellant.

*James D. Oliver*, of Foulston & Siefkin L.L.P., of Wichita, argued the cause, and *Stephen M. Kerwick*, and *Darrell L. Warta*, of the same firm, were with him on the briefs for appellees.

The opinion of the court was delivered by

DAVIS, J.: This appeal comes before us upon our grant of review on two issues: (1) whether the removal of hazardous waste from landowners' property was an "improvement of real property" within the meaning of the mechanic's lien statute, K.S.A. 60-1101; and (2) whether a subcontractor not in privity with the owner of the property may initiate an action for unjust enrichment against the owner when the prime contractor fails or refuses to pay the subcontractor.

The trial court granted summary judgment to the defendant on both issues. The Court of Appeals affirmed the trial court's judgment that the plaintiff's removal of waste was not lienable under K.S.A. 60-1101 but reversed and remanded for consideration of the plaintiff's unjust enrichment claim. *Haz-Mat Response, Inc., v. Certified Waste Services, Ltd.*, 21 Kan. App. 2d 56, 896 P.2d 393 (1995).

The material facts necessary for the resolution of the issues presented are largely undisputed. Defendant Coastal Refining and Marketing (Coastal) contracted with defendants Certified Supply Corporation (Certified) and Chief Supply Corporation (Chief) to dispose of up to 500,000 pounds of Coastal's hazardous waste located on Coastal's property in four containers: two above-ground emulsion breaking tanks, one API separator, and one in-ground

tank. Certified and Chief subcontracted with plaintiff Haz-Mat Response, Inc., (Haz-Mat) to perform part of the work.

Problems arose during performance of the contract, and although Haz-Mat removed the waste from the storage tanks, it was not disposed of as required by the prime contract. Coastal hired other contractors to complete the work. Coastal refused to pay Certified and Chief, who in turn refused to pay Haz-Mat. Haz-Mat filed a mechanic's lien and thereafter filed suit against Certified, Chief, Coastal, and CIC Industries, the apparent owner of the real property on which Coastal conducted business. (Hereinafter, CIC and Coastal will be referred to simply as "Coastal.") In its petition, along with breach of contract claims against Chief and Certified, Haz-Mat asked for foreclosure of a mechanic's lien against Coastal. In the alternative, Haz-Mat asked for judgment against Coastal, Chief, and Certified on the theory of quantum meruit/unjust enrichment. In a separate claim, Haz-Mat asserted a fraud claim against Chief.

Coastal filed a summary judgment motion, claiming that hazardous waste removal would not support a mechanic's lien because the removal is not an improvement of real property. Coastal also claimed that a subcontractor may not recover against a property owner on the basis of unjust enrichment in the absence of privity of contract. On the basis of undisputed facts, the trial court granted Coastal summary judgment on both claims.

Haz-Mat then entered into a stipulation with Chief and Certified for dismissal of all other claims. The trial court dismissed in accord with the stipulation. Haz-Mat appealed. The Court of Appeals affirmed the trial court's ruling that Haz-Mat's activities under the circumstances of this case could not form the basis for a mechanic's lien. However, the Court of Appeals reversed the trial court, concluding that under the circumstances, Haz-Mat had a viable unjust enrichment claim against Coastal notwithstanding a lack of privity. 21 Kan. App. 2d at 65-66. We granted petitions for review on both issues.

## MECHANIC'S LIEN

The Court of Appeals concluded that the removal of hazardous

material under the given facts did not constitute an "improvement of real property" within the meaning of K.S.A. 60-1101 and, therefore, was not lienable. As recognized by the Court of Appeals, the issue presented was a matter of first impression in this state.

We agree with the Court of Appeals' conclusion that the removal of hazardous waste in the circumstances of this case was not lienable; we also agree with some of the rationale provided for this conclusion. However, because this is a case of first impression, we choose to conduct our own analysis of the issues presented. Because this analysis involved the interpretation of a statute, our standard of review is unlimited. See *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992).

Our mechanic's lien law is remedial in nature, enacted for the purpose of providing effective security to any persons furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property under a contract with the owner. The theory underlying the granting of a lien against the property is that the property improved by the labor, equipment, material, or supplies should be charged with the payment of the labor, equipment, material, or supplies.

At the same time, a mechanic's lien is purely a creation of statute, and those claiming a mechanic's lien must bring themselves clearly within the provisions of the authorizing statute. *Kansas City Heartland Constr. Co. v. Maggie Jones Southport Cafe, Inc.*, 250 Kan. 32, 34, 824 P.2d 926 (1992). The statute must be followed strictly with regard to the requirements upon which the right to lien depends. *Schwaller Lumber Co., Inc. v. Watson*, 211 Kan. 141, Syl. ¶ 2, 505 P.2d 640 (1973). However, because the statute is remedial and designed for the benefit and protection of persons designated by the act, once a lien has been found to have attached, the law is to be liberally construed in favor of such claimant. See *Holiday Development Co. v. Tobin Construction Co.*, 219 Kan. 701, 704-05, 549 P.2d 1376 (1976).

K.S.A. 60-1103 provides that a subcontractor may obtain a mechanic's lien as provided for in K.S.A. 60-1101. K.S.A 60-1101 states:

"Any person furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property, under a contract with the owner or with the trustee, agent or spouse of the owner, shall have a lien upon the property for the labor, equipment, material or supplies furnished, and for the cost of transporting the same."

There is no dispute that Haz-Mat complied with all statutory requisites in filing its mechanic's lien, that it provided labor and materials used in the removal of hazardous waste on the owner's real property, and that it has not been paid under its subcontract. The question before the trial court and on appeal is whether Haz-Mat's waste-removal activities constituted an *improvement of real property*.

The phrase "improvement of real property" is not defined in the Kansas mechanic's lien statute. The only reported Kansas case interpreting the term "improvement" as used in our mechanic's lien statute is *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 14 Kan. App. 2d 714, 717, 798 P.2d 511, *rev. denied* 248 Kan. 996 (1990). The question presented in *Mark Twain* was whether the architectural and engineering services provided by subcontractors constituted lienable labor resulting in an improvement to real property when construction was never commenced and there appeared no visible or physical manifestation of the subcontractors work on the property. *Mark Twain* held that the professional services provided were never used or consumed in any improvement of the real property within the meaning of K.S.A. 60-1101. The Court of Appeals relied in part on the earlier case of *Benner-Williams, Inc. v. Romine*, 200 Kan. 483, 485, 437 P.2d 312 (1968), wherein this court said: "In order for a mechanic's lien for labor and materials to attach, such items must be used or consumed for the improvement of real property, and thus become part of the realty itself."

*Mark Twain* concluded that there is a requirement of "[s]ome visible improvement" or some "visible effect on the real estate" "in order to put those who seek to acquire an interest in the land on notice that building has commenced on the property." 14 Kan. App. 2d at 721. However, an examination of the cases relied upon by the Court of Appeals does not support the conclusion that there must be some visible effect on the real property for the activity to

be lienable. *Mark Twain* further concluded that improvement is "generally defined as any physical addition made to real property that enhances the value of the land." 14 Kan. App. 2d. at 720. While this definition may be generally true, there is no requirement under our present law that there be a physical addition made to real property. Further, while the improvement will enhance the value of the land, it need not actually enhance the market value of the land. See 53 Am. Jur. 2d, Mechanics' Liens § 2, p. 517. See also *Masterson v. Roberts*, 336 Mo. 158, 163, 78, S.W.2d 856 (1934) (the question of whether alteration of a building makes the property more valuable is a business decision the owner makes when he authorizes the work to be done and does not affect whether a mechanic's lien may attach).

While the Court of Appeals in this case discusses *Mark Twain*, it did not base its decision on *Mark Twain*. Instead, the Court of Appeals adopted the following dictionary definition of improvement: "A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." Black's Law Dictionary 757 (6th ed. 1990)." Applying this definition, the Court of Appeals concluded that the removal of the waste under the circumstances of this case was not lienable in that removal was part of a maintenance program necessary in the normal course of Coastal's business. "The removal of the waste did not become a part of the property or enhance the value of the real estate because defendant would generate more waste to take its place." 21 Kan. App. 2d at 62.

The phrase "improvement of real property" first appears in K.S.A. 60-1101 in 1964. Other than in *Mark Twain*, the meaning of the term "improvement" used in K.S.A. 60-1101 has not been discussed or defined in Kansas. However, earlier Kansas cases not involving the precise issue we now address provide some guidance for the present statute. In *Hill v. Bowers*, 45 Kan. 592, 26 Pac. 13 (1891), the statute in question granted a lien for a person who furnished material for erecting any fence. The court held that it must appear not only that such material was purchased to be used

for fencing, but it must also appear that the same was in fact so used as to become a part of the realty. *Mortgage Co. v. Weyerhaeuser*, 48 Kan. 335, 29 Pac. 153 (1892), involved the question of when time begins to run under the lien statute. The court held that it was not the placing of some material on lots later used in construction which started the time but that it was the digging of a cellar. "A lien for fixtures or machinery dates from the time they are furnished or put up, by the express words of the section." 48 Kan. at 344.

The labor, equipment, material, or supplies must by the express terms of the statute be used or consumed for the improvement of property. In *Seyb-Tucker Lumber and Implement Co. v. Hartley*, 197 Kan. 58, 415 P.2d 217 (1966), the last date material was furnished became important. It was determined that a certain gallon of turpentine was purchased for use in the construction but never used in the actual construction. In holding that the gallon purchased could not be the basis for a lien and relying on established Kansas law, the court concluded that " 'no lien can be allowed for material purchased for a building on the land of the owner unless it in fact goes into the building and becomes a part of the realty.' " 197 Kan. at 62 (quoting *Sash & Sales Co. v. Early et al.*, 117 Kan. 425, 232 Pac. 232 [1925]). Similarly, in *Benner-Williams, Inc. v. Romine*, 200 Kan. at 485, the court held: "In order for a mechanic's lien for labor and materials to attach, such items must be used or consumed for the improvement of real property, and thus become part of the realty itself."

However, Kansas law does not require that an actual structure be built on the property. In *Benner-Williams*, a lien existed where the labor and materials were provided to remodel an existing residence. See 200 Kan. at 486. In *Southwestern Electrical Co. v. Hughes*, 139 Kan. 89, 93, 30 P.2d 114 (1934), this court determined that bringing in and grading dirt was a lienable activity in that it was an improvement in the property. In *Hughes*, this court concluded that grading was lienable where the evidence established that the lots were low and dirt had to be hauled in to grade up around the house and garage. The court noted that the grading necessary under the plan of construction was as essential as the building of steps to get up and down. The court held: "Dirt fur-

nished for grading the lot as a necessary feature of the plan of construction of the building was a lienable item." 139 Kan. 89, Syl. ¶ 5.

The Court of Appeals in this case cited an Alabama case dealing with the definition of the term improvement. In *Mazel v. Bain*, 272 Ala. 640, 133 So. 2d 44 (1961), the Alabama Supreme Court dealt with the question of whether clearing land, which included "pushing stumps and scrub oaks, raking and leveling the said lands" was an improvement on land under their statute which granted a lien to "every . . . person . . . who shall do or perform any work, or labor upon . . . any building or *improvement on land*." (Emphasis added.) 272 Ala. at 641. The Alabama Supreme Court adopted the Black's Law Dictionary definition of the improvement and held that the labor was lienable. Moreover, the court recognized that the determination of what activity was lienable under its statute depended upon an examination of the facts in each case. The court recognized that improvements meriting the protection of a lien under the statute may occur in unforeseen variety and, thus, the determination was to be made on the facts of each particular case. 272 Ala. at 641-42.

Another case dealing with the definition of improvement to real property is *Cates v. Hunter Engineering Co.*, 205 Ill. App. 3d 587, 563 N.E.2d 1239 (1990). *Cates* is a products liability action involving an allegation of negligent design, assembly, and manufacture of a cold rolling mill, which was characterized as a machine. The question was whether the plaintiff's action was time barred under Illinois law, which provided in part that no action based upon tort may be brought against any person for an act or omission in the design, planning, supervision, observation, or management of construction, or construction *of an improvement to real property*, after 10 years elapsed from the time of such act or omission. 205 Ill. App. 3d at 588.

The question on appeal was whether the defendant had met its burden of establishing that the cold rolling mill was an *improvement to real property* within the meaning of the statute. *Cates* defined an "improvement" as an addition to real property amounting to more than mere repair or replacement and which substan-

tially enhances the value of the property. The court concluded that the installation of the cold rolling mill was more than a "mere repair or replacement," that the installation substantially enhanced the value of the real property, and that the installation was, therefore, an improvement to real property under the statute. 205 Ill. App. 3d at 588-90.

From the above discussion, several observations may be drawn concerning the statutory construction of the phrase "improvement of real property" as used in K.S.A. 60-1101: (1) What is or is not an improvement of real property must necessarily be based upon the circumstances of each case; (2) improvement of the property does not require the actual construction of a physical improvement on the property; (3) the improvement of real property need not necessarily be visible, although in most instances it is; (4) the improvement of the real property must enhance the value of the real property, although it need not enhance the selling value of the property; (5) for labor, equipment, material, or supplies to be lienable items, they must be used or consumed and thus become part of the real property; (6) the nature of the activity performed is not necessarily a determining factor of whether there is an improvement of real property within the meaning of the statute; rather, the purpose of the activity is more directly concerned in the determination of whether there is an improvement of property which is thus lienable; and (7) the furnishing of labor, equipment, material, or supplies used or consumed for the improvement of real property may become lienable if established to be part of an overall plan to enhance the value of the property, its beauty or utility, or to adapt it for a new or further purpose, or if the furnishing of labor, equipment, material, or supplies is a necessary feature of a plan of construction of a physical improvement to the real property. Finally, consistent with the Court of Appeals' opinion in this case, Black's Law Dictionary's definition most closely reflects what is meant by use of the phrase "improvement of real property" in K.S.A. 60-1101: "A valuable addition made to real property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for

new or further purposes." Black's Law Dictionary 757 (6th ed. 1990).

Applying the above definition, we find no evidence in the record that the removal of the hazardous waste was part of an overall plan to improve the property or that removal would necessarily enhance the value of the real property. Removal would presumably allow the business to continue as it had before removal. There is no evidence that removal would adapt the property for new or further purposes. In fact, the evidence established that the same business would be conducted as before. We agree with the Court of Appeals that the removal was not lienable because it was part of a maintenance program that was necessary in the normal course of Coastal's business. The evidence fails as a matter of law to demonstrate that the removal was an "improvement of real property" within the meaning of K.S.A. 60-1101.

## UNJUST ENRICHMENT

The Court of Appeals correctly notes that the question whether a subcontractor can recover from an owner on the basis of unjust enrichment or quantum meruit under the facts of this case is a question of law, with an unlimited scope of review. 21 Kan. App. 2d at 63. As noted by the Court of Appeals:

" 'Quantum meruit is an equitable doctrine. "Restitution and unjust enrichment are modern designation for the older doctrine of quasi-contracts." *Peterson v. Midland Nat'l Bank*, 242 Kan. 266, 275, 747 P.2d 159 (1987). "The theory of quasi-contract is raised by the law on the basis of justice and equity regardless of the assent of the parties." *Holiday Development Co. v. Tobin Construction Co.*, 219 Kan. 701, 708, 549 P.2d 1376 (1976). "The substance of an action for unjust enrichment lies in a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to him [or her]." *Peterson*, 242 Kan. at 275.' *Pioneer Operations Co. v. Brandeberry*, 14 Kan. App. 2d 289, 299, 789 P.2d 1182 (1990)." 21 Kan. App. 2d at 63.

Coastal asks this court for review of the part of the Court of Appeals' decision which determined that the trial court erred in concluding that Haz-Mat could not proceed under the theory of unjust enrichment in the absence of privity of contract. Coastal argues that the overwhelming weight of authority is that this theory is not available to a subcontractor.

: The district court granted summary judgment in favor of Coastal on this issue based on language found in *Holiday Development Co.*, 219 Kan. at 708, wherein this court stated:

"Many courts have considered whether a subcontractor or materialman can obtain a personal judgment against an owner on the basis of quasi-contract or unjust enrichment, in the absence of privity of contract or a direct promise to pay. The overwhelming weight of authority is in the negative (see Anno.: Subcontractor's Recovery Against Owner, 62 ALR 3d 288, § 4, 297-303)."

However, our decision in *Holiday Development Co.* was not based on the finding of a blanket prohibition against the use of unjust enrichment theory where no privity of contract existed, but was based on the conclusion that there was no unjust enrichment. See 219 Kan. at 708-09.

In *J.W. Thompson Co. v. Welles Products Corp.*, 243 Kan. 503, 511-12, 758 P.2d 738 (1988), we stated that "apart from unjust enrichment or from any special statutory rights and remedies, a subcontractor or supplier who has furnished labor or materials for an improvement has no right to a personal judgment against one not in privity." We noted:

"The basic elements of a claim based on a theory of unjust enrichment are threefold: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." 243 Kan. at 512.

The sole basis for the trial court's decision that a claim for unjust enrichment would not lie was lack of privity between the owner, Coastal, and the subcontractor, Haz-Mat. Our past cases establish that recovery under quasi-contract or unjust enrichment is not prohibited simply because the subcontractor and the owner of the property are not in privity. This conclusion is consistent with the theory of quasi-contract and unjust enrichment, which does not depend on privity. See 66 Am. Jur. 2d, Restitution and Implied Contracts § 2, pp. 943-44.

However, in both of the above cases this court held that the circumstances did not permit the subcontractor to proceed with a claim of unjust enrichment against the owner. In *Holiday Devel-*

*opment Co.*, 219 Kan. at 707, we said that "[a] subcontractor or materialman generally may not obtain a personal judgment against the owner in the absence of an agreement by the owner to pay (*Hodgson v. Billson*, 12 Kan. 568; *Sash Co. v. Heiman*, 71 Kan. 43, 80 Pac. 16; *Geis Irrigation Co. v. Satanta Feed Yards, Inc.*, 214 Kan. 373, 521 P.2d 272)." We further concluded in *J. W. Thompson*, 243 Kan. at 512: "There simply are no special circumstances to justify its [unjust enrichment] application." Both cases cited with approval the annotation in 62 A.L.R.3d 288, entitled "Subcontractor's Recovery Against Owner." We may conclude from our past decisions and from a close examination of this annotation that the circumstances under which an unjust enrichment claim may be brought by a subcontractor against an owner, absent privity, are indeed limited.

In theory, the right to recover under unjust enrichment is governed by principles of equity. The obligation upon which the right to recover is based is created and imposed by law to prevent unjust enrichment at the expense of another. If the law is to allow the action based upon an implied-in-law contract between the owner and subcontractor, there must exist some special circumstances that would justify requiring the owner to pay. An examination of our past cases and further consideration of those cases set forth in Annot., 62 A.L.R.3d 288, convinces us that an essential prerequisite to such liability is the acceptance by the owner (the one sought to be charged) of benefits rendered under such circumstances as reasonably notify the owner that the one performing such services expected to be compensated therefor by the owner. In the absence of evidence that the owner misled the subcontractor to his or her detriment, or that the owner in some way induced a change of position in the subcontractor to his or her detriment, or some evidence of fraud by the owner against the subcontractor, an action for unjust enrichment does not lie against the owner by a subcontractor.

Although Haz-Mat submitted an affidavit stating that its president "believed" Coastal was responsible for the bill along with the prime contractor, Haz-Mat did not present any evidence nor did it claim that this supposed belief was based on any statement or

promise by Coastal. We do not suggest that privity must be established or that a promise by the owner must be established in order for the plaintiff to have an unjust enrichment claim, but there must exist such special circumstances to warrant such an action. Here, no such circumstances existed.

· The Court of Appeals concluded that unjust enrichment would lie because "plaintiff's removal work is not lienable under K.S.A. 60-1101" and an action in equity might be plaintiff's only available avenue. In reaching its conclusion, we believe the Court of Appeals placed too much emphasis on the position of the plaintiff and failed to emphasize that the basis of an unjust enrichment action involves a consideration of the circumstances surrounding the acceptance and retention of the benefit by the defendant. While the position of the plaintiff is always a factor to be considered, it is "the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value" that is of critical importance in making a determination of whether such an action will lie. *J. W. Thompson Co.*, 243 Kan. at 512.

*Holiday Development Co.*, 219 Kan. 701, remains good law. Those factors set forth in that opinion should be considered when deciding whether there is a basis for an action for unjust enrichment. However, the *Holiday Development Co.* factors are not exhaustive. As we have concluded in this case, an essential prerequisite to such liability for unjust enrichment in a case between a subcontractor and owner not in privity is the acceptance, by the one sought to be charged, of benefits rendered under such circumstances as reasonably to notify him or her that the one performing such services expected to be compensated therefor by the one sought to be charged. Moreover, the undisputed facts fail to establish that Coastal misled Haz-Mat to its detriment, that Coastal in some way induced a change of position in Haz-Mat to its detriment, or that any fraud existed. Although on an entirely different basis, we conclude that the undisputed facts require affirmance of the trial court's decision that the theory of unjust enrichment was not available to Haz-Mat.

The judgment of the Court of Appeals is affirmed in part and reversed in part, and the judgment of the district court is affirmed.