No. 39,345

JOSEPH MURPHREE, *Appellant*, v. TRINITY UNIVERSAL INSURANCE COMPANY, *Appellee*, and CARL R. VOTH, doing business as VOTH PLANING MILL, JOY D. ANDERSON, et al., doing business as ANDERSON PAINTERS, and HARRY DOBSON, doing business as HARRY DOBSON COMPANY, *Appellants*.

(269 P. 2d 1025)

Opinion filed May 8, 1954.

*J. G. Somers*, of Newton, argued the cause, and *George A. Robb*, of Newton, was with him on the briefs for the appellant, Joseph Murphree. *Vernon A. Stroberg*, of Newton, argued the cause, and *Kenneth G. Speir* and *Herbert H. Sizemore*, both of Newton, were with him on the briefs for the appellant, Carl R. Voth, doing business as Voth Planing Mill. *J. Rodney Stone*, of Newton, was on the briefs for the appellants, Joy D. Anderson, *et al*, doing business as Anderson Painters. *John P. Flinn*, of Wichita, was on the briefs for the appellant, Harry Dobson, doing business as Harry Dobson Company.

*Donald R. Newkirk*, of Wichita, argued the cause, and *Howard T. Fleeson*, *Homer V. Gooing*, *Wayne Coulson*, *Paul R. Kitch*, *Dale M. Stucky*, *Robert J. Hill*, *Gerrit H. Wormhoudt* and *Theodore C. Geisert*, all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Price, J.: This was an action by a subcontractor against the contractor and his corporate surety on what is commonly referred to as a statutory lien bond.

In December, 1950, one Gould and his wife entered into a written contract with one Abney, a contractor, whereby the latter was to construct a home for the Goulds in the city of Newton for the contract price of $25,000. The contract provided for the giving of a bond by Abney to guarantee faithful performance of the contract, but did not provide for a bond to guarantee payment of lienable claims such as is provided for by G. S. 1949, 60-1412. However, such a statutory lien bond was given. It was dated January 31, 1951, was signed by Abney as principal and by defendant insurance company as surety, and, was in the penal sum of $25,000. It was conditioned that the principal or the subcontractor or subcontractors of the principal shall pay all indebtedness incurred for supplies, materials or labor furnished, used or consumed in connection with or in or about the construction of the house.

The contract between the Goulds and Abney provided that if the latter should be unable to furnish any material called for by the plans and specifications, or substitute material agreed upon, the Goulds might furnish such materials at cost, such cost to be deducted from the stated contract price, and further provided that if construction should not be completed by May 1, 1951, or in the event of abandonment or substantial abandonment or failure of the contractor to proceed with the completion of the building, the Goulds might take over the improvements and procure such materials and labor as were necessary and proper to complete the building and improvements in accordance with the plans and specifications, and that they might then deduct the cost of completing the building from the total contract price. The contract further provided that such provision for completion of the building by the Goulds should in no way affect, release or exonerate any surety or sureties on any guarantee or bond made in connection with the contract.

Abney began work under the contract early in January, 1951. During the early months of construction he had several other construction jobs in progress. He left the Gould project uncompleted, and his last work on it was about the middle of October, 1951.

As is so often the case in a matter of this kind, during the con-

struction numerous changes and additions were made all over the house. An illustration of this is the case of the plaintiff, Murphree, who had a written subcontract from Abney to furnish the labor and materials to install the plumbing, heating, electrical system and guttering, at a subcontract price of $4,000. The instant action was filed by him against Abney as principal in the bond and the corporate surety therein to recover a sum in excess of $4,500 for additional labor and materials occasioned by the changes and alterations made as construction of the house progressed.

Service of process was not made on Abney and he is not a party to this litigation. The action therefore stands against only the corporate surety on Abney's statutory lien bond.

Other claimants for materials and labor furnished by them in the construction of the house were joined as defendants and they filed their answers and cross-petitions seeking recovery on their claims against Abney's corporate surety.

The trial court made findings of fact and conclusions of law. These findings, insofar as the same are material for a proper disposition of this appeal, are, in substance, as follow:

With respect to Murphree, the court found that he had a written subcontract from Abney to furnish the labor and materials to install the plumbing, heating, electrical system and guttering called for by the building contract, and that he had been paid the full subcontract price of $4,000. The court further found that Murphree furnished several other items of labor and material referred to as "extras," which went into the construction, and that of such extras items totalling $598.88 were outside his subcontract and were ordered by the contractor Abney, and that other extras were ordered directly by the Goulds and another person who was a stranger to the contract and who was not shown to have had any right to represent either the Goulds or Abney. The court also found there was no evidence that any of the extras claimed by Murphree were agreed upon between the Goulds and Abney.

With respect to claimant Voth, the court found that his testimony showed an "arrangement" with Abney as a subcontractor to furnish millwork and cabinet work for the house which had not already been furnished; that this arrangement or understanding was had with Abney and the Goulds in July, 1951. Voth's material and time sheets were marked either "Gould" or "Jim Gould residence." He did not bill Abney for any of his work but did bill Gould. Voth's

total charges for his mill and cabinet work amounted to $6,207.16, of which amount Gould paid him $5,050.00.

With respect to claimant Anderson's claim for materials and labor in connection with painting, finishing and decorating of the house, the court found that such claimant had no subcontract with Abney; that the work and materials furnished by him were not ordered by Abney; that the bills for such work and materials were billed to Gould, and that of the total charges of Anderson, amounting to $5,030.32, the sum of $3,407.25 had been paid by Gould.

With respect to claimant Dobson's claim for labor and material furnished, totalling $624.60, the court found that such labor and materials were furnished by Dobson at the instance and direction of Gould and not under any subcontract or agreement with Abney.

The court's conclusions of law were as follow:

"1. The bond sued on is 'for the benefit of all persons in whose favor liens might accrue' in the absence of the bond. It is a substitute for liens.

"2. The plaintiff and the defendant cross-petitioners assert their claims herein as subcontractors. They may recover only for materials and labor furnished 'under a subcontract with the contractor.'

"3. No recovery can be had in this action against the surety, Trinity Universal Insurance Company, on any claim for which the principal, John P. Abney, is not liable.

"4. The plaintiff is entitled to recover from the defendant surety the sum of $598.88, being the total of the charges for 'extras' which it is stipulated were furnished on the order of the contractor, Abney, with interest at the rate of 6 percent per annum from the 24th day of May, 1952.

"5. None of the cross-petitioners are entitled to any recovery herein.

"6. The costs of this action should be assessed one-half against the defendant surety and one-half against the defendant cross-petitioners."

Various motions of claimants with reference to the court's findings and conclusions, and for a new trial, all being overruled, the court entered judgment in favor of plaintiff Murphree and against defendant surety, in accordance with conclusion of law number 4, *supra,* and claimants appeal, alleging some sixteen specifications of error.

No attempt will be made to take up and discuss the specifications of error separately, a number of which concern the findings of fact made by the lower court. As to them we can only say that the record has been examined, and it cannot be said the findings are not supported by the evidence. That being the case, it is elementary that they are binding upon this court on appellate review. Those findings are to the effect that the various items of material and labor

for which claims are made were, with the one exception, the result of direct dealings between the respective claimants and Gould, and were not furnished under subcontracts with Abney, the contractor.

Narrowed down, therefore, the case really presents only the one legal question, namely—is a surety on a contractor's statutory bond which provides for the payment of lienable claims liable for the payment of indebtedness for labor and materials not incurred by the contractor or his subcontractors? Or, stated another way—do claimants have a right of action against defendant surety on the statutory lien bond for the cost of materials and labor furnished directly to and at the instance and direction of the owner?

In our opinion the lower court correctly answered the question in the negative.

It is quite true that the statutory lien bond in question is a substitute for liens, is for the use of all persons in whose favor liens might accrue, and when such a bond is filed and approved no lien shall attach (G. S. 1949, 60-1412). In other words, when the bond is filed a claimant is not required to file a lien statement in order to preserve his rights—he may then look to the bond for recovery—but other than this the bond effects no change in the rights and relations of the parties. A claimant can recover on the bond only if in its absence he could have perfected and enforced a lien.

G. S. 1949, 60-1401, provides for a lien in favor of any person who furnishes materials or labor "under a contract with the owner of any tract, or piece of land, . . ." However, none of these claimants claims to have contracted with Gould, the owner, with respect to the matters in controversy. On the contrary, each of their claims is based upon the theory of a subcontract with the contractor, Abney. It naturally follows, therefore, that under their own theory none of them would have been entitled to a lien by virtue of this section of our statutes.

It is obvious that claimants' rights as self-styled subcontractors arise under the provisions of G. S. 1949, 60-1403, which, among other things, gives a lien to any person who shall furnish material or perform labor under a subcontract with the contractor, or as an artisan or day laborer in the employ of such contractor. In other words, to be entitled to a lien under the act as a subcontractor a claimant must have a contract with the contractor and must furnish his materials and labor under such contract. On this phase of the case the lower court, as already stated, found that the materials and

labor in controversy, with the one exception, were not furnished as the result of subcontracts with Abney, the contractor, but rather were furnished at the instance and direction of Gould and another party. Such being the case, claimants would have no right to a lien by virtue of this section of our statutes.

The point really amounts to this:

Claimants' actions are predicated upon their alleged subcontracts with Abney. Had they established that materials and labor, for which recovery is sought, were furnished by virtue of those alleged subcontracts with the contractor they would have been entitled to perfect and enforce liens as subcontractors under G. S. 1949, 60-1403, and, under G. S. 1949, 60-1412, would have valid causes of action on the bond. By the latter section the bond could have been given by either the contractor (Abney) or the owner (Gould). It was given by Abney—not by Gould—and was given to guarantee payment of indebtedness incurred by the contractor and his subcontractors in performance of the contract which was made a part of the bond, and not to guarantee payment of any and all indebtedness which might be incurred by the owner or members of his family for materials and labor going into the construction.

There is nothing in the record to establish that in ordering the materials and labor in question Gould was the agent of Abney. Having furnished the materials and labor at the instance and direction of the owner, Gould, claimants' remedy was to perfect and enforce their liens against Gould, under G. S. 1949, 60-1401, but they did not choose to do so. Instead they proceeded on the theory of being subcontractors of Abney and, having failed in their proof of such subcontracts, they are not permitted to recover against the surety on the contractor's statutory lien bond.

All contentions and authorities urged by claimants have been examined and considered but, with respect to the facts and questions here presented, are found to be without substantial merit. The lower court made proper disposition of this case and the judgment is therefore affirmed.