No. 55,491

THE BOB ELDRIDGE CONSTRUCTION CO., INC., *Appellant,* v. PIONEER MATERIALS, INC., and UNITED STATES GYPSUM COMPANY, *Appellees,* and PIONEER MATERIALS, INC., *Appellee,* v. THE BOB ELDRIDGE CONSTRUCTION CO., INC., and FIREMAN'S FUND INSURANCE COMPANY, *Appellants.*

(684 P.2d 355)

Opinion filed June 8, 1984.

*Ronald K. Barker,* of Margolin and Kirwan, of Kansas City, Missouri, argued the cause, and *H. Thomas Payne,* of Payne and Jones, Chartered, of Olathe, was with him on the brief for the appellants.

*James L. Eisenbrandt,* of James L. Eisenbrandt, Chartered, of Overland Park, argued the cause and *Dennis J. Brundige,* of Happy, Cooling & Hebers, P.C., of Kansas City, Missouri, was with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an action for recovery on bonds filed to discharge mechanics' liens on property.

Bob Eldridge Construction Company, Inc., is a general contractor who was engaged in the construction of Peachtree Plaza Tower and Somerset Plaza Tower. These are highrise apartment buildings for the elderly in Haysville and Wichita.

The specifications for Peachtree and Somerset called for the use of one-half inch plain gypsum drywall (also known as "wallboard" or "sheetrock") in the individual living units and fire-rated gypsum board and water-resistant gypsum board where specifically noted. Eldridge subcontracted its drywall work on Somerset and Peachtree to R & S Construction Company. R & S was responsible for furnishing and installing the gypsum walls at Somerset and Peachtree under its subcontract with Eldridge.

Pioneer Materials, Inc., is the principal supplier of drywall in

the Wichita area. Pioneer supplied all of the drywall in the Peachtree and Somerset projects. Pioneer's agreement with Eldridge was that Eldridge and R & S would call and place orders as needed. Pioneer had no subcontract with Eldridge.

Pioneer's procedure for delivering materials to the Peachtree and Somerset projects was to give its employees an invoice and a truckload of material. The employee was told to deliver the material and get the delivery ticket signed when the delivery was completed. When the employee returned with the empty truck and handed in the delivery ticket, he was paid for delivering the material.

R & S failed to complete the work under its subcontract. After R & S left the projects, Pioneer supplied drywall and drywall accessories directly to Eldridge. R & S later took bankruptcy.

All of the drywall utilized in the projects was delivered to the job sites by Pioneer. Ron Eldridge, general superintendent for Eldridge Construction Company, saw the sheetrock stored at the job site. The owners of the projects were aware that Pioneer was the drywall supplier.

When Eldridge and R & S requested materials, they would be invoiced on an open account by Pioneer. The terms of the open account were stated on the invoice which the contractor received when he accepted the materials. The invoices charged an interest rate of 1.5% per month on accounts not paid in full on the 10th of the month following the date of purchase.

Payment for materials requested by R & S and supplied by Pioneer was to be made by R & S through its monthly draws from Eldridge. Eldridge received all of the invoices from Pioneer on the projects either as they were submitted directly to Eldridge for payment or from R & S, since the invoices were attached to its monthly draw sheets. Pioneer sold 416,536 square feet of drywall to R & S on its account for use in the Peachtree and Somerset projects and sold 1,728 square feet of drywall directly to Eldridge for use in the projects.

There is no claim that Pioneer overcharged for the drywall or that the materials ordered had not been completely delivered to the projects by Pioneer.

Defects in the drywall were discovered after Pioneer had completed its work on the projects. The defects were caused by the manufacturing process and were, therefore, not the fault of

Pioneer, the supplier. The only reason Pioneer was not paid by Eldridge was due to the defects.

Pioneer filed lien statements against the Peachtree project in the amount of $6,238.84 and against the Somerset project in the amount of $11,439.78 on March 28, 1979, in Sedgwick County. Attached to the lien statements were documents entitled "statement in support of lien" which listed material invoice numbers, the dates of the invoices and the amount charged for each invoice listed. Copies of the invoices themselves were not attached. The lien statements were signed by Gary Hamel in his capacity as president of Pioneer.

On July 30, 1979, Eldridge, as principal, and Fireman's Fund, as surety, executed and filed bonds to discharge the liens filed by Pioneer. On October 22, 1980, Eldridge filed a petition against Pioneer and United States Gypsum Company for damages resulting from the defective drywall supplied to the Peachtree and Somerset projects.

Pioneer filed an answer, counterclaim and cross-claim on July 30, 1981. The counterclaim was filed against Eldridge and Fireman's Fund and sought recovery on the bonds which had been filed to discharge the liens against Peachtree and Somerset.

On November 12, 1981, Pioneer filed a new action against Eldridge and Fireman's Fund stating the same cause of action stated in its counterclaim. The two cases were then consolidated for trial.

Eldridge's claims against Pioneer and United States Gypsum were tried to the court on April 5, 1982. At the conclusion of Eldridge's case against Pioneer and United States Gypsum, the proceedings were adjourned until April 21, 1982. When the proceedings resumed the trial court was advised Eldridge had dismissed its action against Pioneer and United States Gypsum as part of a settlement with United States Gypsum.

On January 19, 1983, the trial court entered its memorandum decision in favor of Pioneer on the bonds against Eldridge and Fireman's Fund in the amount of $6,238.84 on Peachtree and $11,439.78 on Somerset with interest at the rate of 18% per annum from March 28, 1979. Eldridge and Fireman's Fund instituted this appeal.

The first issue raised by appellant is the trial court erred in

ruling it was not necessary for appellee to prove it had perfected its liens against appellant.

The appellee, Pioneer, filed mechanics' liens against the Somerset and Peachtree projects for materials it supplied for their construction. Shortly after the filing of the liens, the appellants posted bonds pursuant to K.S.A. 60-1110 to discharge the mechanics' liens. Appellee then brought this action to recover on the bonds.

At trial, the appellant argued the appellee had not perfected its liens by complying with all of the statutory requirements, including proof of a reasonably itemized statement, an authorized verification, and proof that the material was used or consumed for the improvement of the appellant's real property. The trial court ruled the perfection of the lien need not be proved since the filing of the bond discharged the lien; therefore, all the proof necessary is that the appellee under agreement supplied material which was used in the construction. Appellant argues this is error since the trial court is then validating the lien without the requisite statutory proof.

The statute involved here, K.S.A. 60-1110 states:

"The contractor or owner may execute a bond to the state of Kansas for the use of all persons in whose favor liens might accrue by virtue of this act, conditioned for the payment of all claims which might be the basis of liens in a sum not less than the contract price, with good and sufficient sureties, to be approved by, and filed with, the clerk of the district court, and when such bond is so approved and filed no lien shall attach under this act, and if when such bond is filed liens have already been filed, such liens are discharged. Suit may be brought on said bond by any person interested."

This clearly shows the lien need not be perfected in this case, rather, it must merely be shown that it could have been perfected if the bond had not been filed. This interpretation is supported by case law. In *Murphree v. Trinity Universal Ins. Co.,* 176 Kan. 290, 294, 269 P.2d 1025 (1954), we held:

"It is quite true that the statutory lien bond in question is a substitute for liens, is for the use of all persons in whose favor liens might accrue, and when such a bond is filed and approved no lien shall attach (G.S. 1949, 60-1412). In other words, when the bond is filed a claimant is not required to file a lien statement in order to preserve his rights — he may then look to the bond for recovery — but other than this the bond effects no change in the rights and relations of the parties. A claimant can recover on the bond only if in its absence he could have perfected and enforced a lien."

It has also been stated the bond money "stands in place of the

lien, but the payment into court is not an acknowledgement of claimant's right or a waiver of defenses, and a claimant is not entitled to receive, or share in, the amount deposited until he has established his claim and lien." 57 C.J.S., Mechanics' Liens § 233.

The trial court, therefore, did not err in holding the bonds discharged the lien and the appellee was bound only to prove the validity of its claim to the bonds. Thus, the only question is whether the appellee *could* have perfected the lien, which is the next issue raised by appellant.

Appellant argues the trial court erred in concluding the evidence established that appellee could have perfected and enforced its liens. To establish this appellant cites ten errors in appellee's liens. Appellee argues these errors were not reserved in the pretrial order as defenses and hence cannot be raised on appeal. The record reveals these defenses were generally articulated in the pretrial order and specifically called to the court's attention at various times throughout the trial process. They were *sufficiently raised at the trial level to pursue on appeal.* Appellee's argument is without merit.

Appellee next argues the ten errors pertain to an action to foreclose the lien and this action was not on the lien but rather on the bonds. While this is correct, as previously shown, the appellee still has the burden to show it *could* have perfected its liens. The issue before the court is to what extent the appellee must show it could have perfected its liens. We hold the rule is as stated in *Murphree* that "when the bond is filed a claimant is not required to file a lien statement in order to preserve his rights — he may then look to the bond for recovery . . . ." 176 Kan. at 294. This means when the bond is filed the statutory requirements of the lien, such as the filing of a lien statement, need not be complied with and are waived. The only requirement to recover the bond money is to prove the material or labor was supplied by the claimant and was used in the improvement of the real property which was the subject of the lien. The case then shifts from a showing that each statutory lien element was fulfilled to a showing that the claimant has a right to the bond. See 57 C.J.S., Mechanics' Liens § 233, p. 806. The posting of a bond also eliminates the need for the strict construction rule we adhered to in mechanics' lien cases since the lien is thereby eliminated.

Considering appellee's right to the bond, appellant first argues there is no proof of delivery of the materials. We have held there will be a presumption of use if there is proof of delivery of the materials to the building site. See *Geis Irrigation Co. v. Satanta Feed Yards, Inc.*, 214 Kan. 373, 521 P.2d 272 (1974). In this case the invoices, which showed who had performed the delivery of the materials, were admitted into evidence. The individuals performing the deliveries, however, were not witnesses in the case. Appellant argues this is insufficient proof of delivery. It is not stated what level of proof appellant would deem sufficient. The testimony at trial from both appellant's and appellee's witnesses was that all of the materials were delivered as contracted and they were seen on the site. This court in *Geis* stated:

"The appellants argue with considerable force there was not sufficient proof that the material and supplies furnished found their way into the building. Again, this is a question of fact for the determination of the district court. It found the material and supplies in question were delivered and placed at the building site. There was substantial evidence to support the finding. With respect to the enforcement of a mechanic's lien, this state follows the rule of presumptive use where material is delivered to the building site." 214 Kan. at 379.

There is substantial evidence to support the trial court's finding of fact that delivery occurred in this case.

Appellant also argues the lien statement falsely identified Pioneer as a subcontractor and there was no proof of a contract to supply material to the contractor. Pioneer was allowed to bring the lien as a subcontractor or "other person" under the lien statute. See K.S.A. 60-1103. The false identification as a subcontractor, rather than as an "other person," on the lien form was not misleading and did not allow Pioneer to recover when it ordinarily would not have been allowed to.

As to the existence of a contract between appellee and appellant there was evidence appellee furnished drywall to both appellant and its subcontractor, R & S, under an open account system of ordering and payment. The general rule is that a claim for materials furnished to a subcontractor is within the coverage of a bond given by a general contractor to secure payment for labor and materials employed or used in the performance of the general contract. See *Leidigh & Havens Lumber Co. v. Bollinger*, 193 Kan. 600, 603, 396 P.2d 320 (1964). A contract was, therefore, sufficiently proven.

The statute of limitations on foreclosure of a mechanics' lien is one year from the filing of the lien pursuant to K.S.A. 60-1105. Pioneer's suit on the bond was not filed until July 30, 1981, over two years from the date of the filing of the lien statements. Appellant argues the action is, therefore, barred as being out of time.

The bond statute involved here, K.S.A. 60-1110, does not provide its own statute of limitations. Thus, the question is whether the lien enforcement statute of limitations of one year given in K.S.A. 60-1105 or the five-year statute of limitations for bonds in K.S.A. 60-511 is to be applied. It is argued K.S.A. 60-511 applies since no statute of limitations is listed in K.S.A. 60-1110. K.S.A. 60-501 states:

"The provisions of this article [Article 5. — Limitations of Actions] govern the limitation of time for commencing civil actions, except where a different limitation is specifically provided by statute."

K.S.A. 60-511(4) specifically provides a five-year statute of limitation for:

"(4) An action upon the official bond or undertaking of an executor, administrator, conservator, sheriff, or any other officer, or upon the bond or undertaking given in attachment, injunction, arrest, or in any case required by statute."

Since this is a suit on the bonds given by appellant, and not a mechanics' lien foreclosure, the five-year statute of limitations pertaining to bonds is the appropriate limitation.

Appellant next argues that while the trial court granted the appellee's request to amend the pleadings to include a theory of recovery for quantum meruit, an actual amendment was never filed. Pursuant to K.S.A. 60-216, the trial court's pretrial order amends the pleadings and no other document need be filed. This issue is without merit.

Appellant also argues the amendment to include the quantum meruit theory should have been disallowed since the three-year statute of limitations which governs quantum meruit claims had passed by the time of the pretrial conference. K.S.A. 60-215(c) provides amended pleadings relate back to the original pleadings and are deemed to be timely if they "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ." Appellant claims the quantum meruit theory does not apply since it is a completely new cause of action. This issue need not be resolved

since the trial court did not grant recovery on the quantum meruit theory. The trial court stated: "Essentially, the question is one of proof and recovery under two open accounts and not under quantum meruit." Thus, there can be no error or prejudice by allowing the amendment.

Appellant next argues the trial court erred in granting appellee prejudgment interest at the rate of 18% per annum from March 28, 1979, pursuant to K.S.A. 16-205(a). This statute provides:

"When a rate of interest or charges is specified in any contract, that rate shall continue until full payment is made, and any judgment rendered on any such contract shall bear the same rate of interest or charges mentioned in the contract, which rate shall be specified in the judgment; but in no case shall such rate or charges exceed the maximum rate or amount authorized by law, and any bond, note, bill or other contract for the payment of money, which in effect provides that any interest or charges shall accrue as a penalty for any default, shall be void as to any such provision."

The trial court held this statute was applicable because the amounts owed were certain and the invoices clearly showed the amount was due on the 10th day of the month following delivery and acceptance. The invoice also provided for interest at the rate of 18% per annum on overdue accounts. The acceptance of the ordered material constituted acceptance of the terms of payment. Ron Eldridge, Eldridge Construction Company's supervisor, testified the relationship between the parties was for the contractor to request the materials and then be invoiced on an open account. The terms of the open account were the terms on the invoices. The contractor accepts the terms when he accepts the materials. Mr. Eldridge further testified that in the course of dealing with materialmen in general and Pioneer in particular, he knew it was customary for materialmen to charge interest on an invoice in the event payment was not made on time.

Clearly, the parties contemplated the payment of interest by their course of dealing and their knowledge of trade practices and customs. No evidence was introduced by appellant to show the 18% per annum interest was unreasonable or unacceptable.

The trial court did not err in holding K.S.A. 16-205(a) requires the awarding of interest pursuant to the invoice terms.

The last issue is that the trial court erred in entering judgment against Fireman's Fund Insurance Company. The trial court in this case denied appellee's motion to dismiss appellant's petition for failure to join Fireman's Fund as a contingently necessary

party. The trial court also denied appellee's motion to join Fireman's Fund as a contingently necessary party under the counterclaim. At the pretrial conference, the parties agreed to sever appellee's claims against Fireman's Fund for trial at a later date. This agreement was memorialized in the pretrial order. Statements were made during the course of the trial by counsel for both parties that the only issue being tried to the court was appellee's claims against Eldridge. The trial court did not make findings of fact with regard to the liability of Fireman's Fund under the lien bonds. The trial court, however, entered judgment against Fireman's Fund, as well as Eldridge for all amounts claimed by appellee. Appellant claims the trial court's action denied Fireman's Fund the right to have its evidence on the matter considered by the court.

In *General Motors Acceptance Corporation v. Mogge,* 181 Kan. 346, 311 P.2d 339 (1957), we held sureties on a delivery bond were included in the judgment in a former action against the debtor-property owner in the absence of fraud or collusion between the parties. The surety was not permitted to retry the issues resolved in the former action. The surety was also precluded from setting up any defenses which with reasonable diligence could have been raised in the former action.

In the instant case, no issue regarding fraud or collusion was raised by Fireman's Fund in its pleadings. The defenses and claims were identical to those of Eldridge. The attorneys for Fireman's Fund are the attorneys for Eldridge. There is no conflict, therefore, between the parties. The trial court erred in allowing judgment against a party when it held that judgment would be preserved for another trial. That error is harmless, however, since the issues in a separate trial against Fireman's Fund would be identical to those presented here. We have held error which does not prejudice the substantial rights of a party affords no basis for reversal of a judgment and must be disregarded. See *Kansas Savings & Loan Ass'n v. Rich Eckel Construction Co., Inc.,* 223 Kan. 493, Syl. ¶ 1, 576 P.2d 212 (1978). The trial court did not commit reversible error in including Fireman's Fund in its judgment.

The judgment of the trial court is affirmed.