IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,037

WAGNER INTERIOR SUPPLY OF WICHITA, INC.,
*Appellant*,

v.

DYNAMIC DRYWALL, INC., *et al*.,
*Defendants*,
(PUETZ CORPORATION and UNITED FIRE & CASUALTY COMPANY),
*Appellees*.

SYLLABUS BY THE COURT

1.

A mechanic's lien is purely a statutory creation and, to create an enforceable lien, the statutory requirements must be followed strictly.

2.

The Kansas mechanic's lien law is remedial, providing effective security to anyone furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property under a contract with the owner. The theory behind granting a lien against the property is that the owner of property benefitting from the improvement should be charged with payment for the labor, equipment, material, or supplies used in the improvement.

3.

In actions on liens, the claim, not the statutory lien, is the fundamental interest to be considered. Without a claim, a mechanic's lien fails at the outset. Failure to employ a mechanic's lien, or failure to use one effectively by not following the statutory directions

1

for procedure and form, does not extinguish the claim. The lien is no more than a means available to try to collect on the claim.

4.

After a bond is filed, the focus is on the claim, not the statutory lien, and the only requirement to recover from the bond money is to prove the material or labor was supplied by the claimant and was used in the improvement of the real property that was the subject of the lien.

5.

The 2005 amendments to K.S.A. 60-1110, which added procedures for smaller, more narrowly-directed bonds to release liens, did not change the relationship between claims and liens, and a perfection defense continues to be relevant only against an asserted statutory lien.

6.

Payment of a claim against a bond depends not on satisfaction of the perfection requirements under the lien statute but on the ability to prove the elements of the underlying claim.

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 2, 2015. Appeal from Sedgwick District Court; MARK A. VINING, judge. Opinion filed February 24, 2017. Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed and remanded with directions.

*Vincent F. O'Flaherty*, of Law Offices of Vincent F. O'Flaherty, Attorney, LLC, of Kansas City, Missouri, argued the cause and was on the briefs for appellant.

*Ryan M. Peck*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Nanette Turner Kalcik* and *Richard A. Kear*, of the same firm, were with him on the briefs for appellees.

The opinion of the court was delivered by

STUTZMAN, J.: Puetz Corporation (Puetz) was the general contractor to build a hotel in Wichita, Kansas. One of its subcontractors, Dynamic Drywall, Inc. (Dynamic), obtained materials for its part of the project from Wagner Interior Supply of Wichita, Inc. (Wagner), but failed to pay for them. Wagner filed a lien statement with the district court in Sedgwick County, claiming a lien against the hotel property. The owner of the hotel, Wichita Hospitality Group, LLC, was in the process of refinancing the project and Wagner's lien stood as a cloud on the title, so Puetz filed a bond with the district court to secure payment of Wagner's claim. With approval of the bond by the district court came the discharge of the lien under the terms of K.S.A. 60-1110.

Puetz contends Wagner's lien was defective because it had not been properly perfected, so the lien could have been challenged and removed, preventing foreclosure, had there been time for litigation. Although it chose to file the bond rather than litigate the lien, Puetz claims the opportunity was not lost, as its argument about the defects in Wagner's lien filing survived the release of the lien and still can be asserted as a defense to Wagner's claim against the bond. Wagner takes the position that any defenses Puetz may have had against the lien filing have no relevance now, since the filing of the approved bond discharged the lien. The district court reviewed summary judgment motions from both Puetz and Wagner and granted judgment to Puetz. On Wagner's appeal, the Court of Appeals reversed the district court. We affirm that decision.

3

FACTS AND PROCEDURAL BACKGROUND

In September 2012, Wichita Hospitality Group engaged Puetz to act as general contractor for the construction of a new Holiday Inn Express & Suites hotel in Wichita. Puetz subcontracted the drywall work on the project to Dynamic and paid Dynamic for its part of the work. Dynamic ordered materials for the project from Wagner, but it did not pay for those materials that Wagner provided and that were used in the construction. Dynamic later filed a petition for bankruptcy relief.

Near the end of November 2013, Wagner, as an unpaid supplier, filed a lien statement with the clerk of the district court of Sedgwick County, claiming a lien against the hotel property in the amount of its unpaid claim, $108,162.97. At the time Wagner filed its lien statement, Wichita Hospitality Group was refinancing the hotel and Wagner's filing placed a cloud on the title, affecting the refinancing. To clear that problem, Puetz presented a bond to the district court pursuant to K.S.A. 60-1110, titled "Release of Lien Bond" with Puetz as principal and United Fire & Casualty Company (United) as surety, specifically securing the payment of Wagner's claim. Under the provisions of that statute, once the bond was approved by a judge of the district court and filed with the court clerk, Wagner's lien was discharged. The approved bond was filed on January 13, 2014.

In February 2014, Wagner filed suit against Dynamic, Puetz, and United for payment for the materials it had supplied to Dynamic for the hotel. Wagner made a claim against the bond for the money it was owed and sought damages from Dynamic and Puetz for unjust enrichment. Both sides filed motions for summary judgment and, in November 2014, the district court entered an order granting summary judgment to Puetz and United. Wagner's claim against Dynamic was stayed because of Dynamic's bankruptcy.

4

On Wagner's timely appeal, the Court of Appeals reversed the order of the district court and directed that judgment be granted to Wagner. See *Wagner Interior Supply of Wichita, Inc. v. Dynamic Drywall, Inc.*, No. 113,037, 2015 WL 5750465 (Kan. App. 2015) (unpublished opinion).

ANALYSIS

*Standard of review*

The case is before us to review the district court's order for summary judgment that was reversed by the Court of Appeals. Our standard of review is de novo.

"On appeal from summary judgment, an appellate court applies the same rules as the district court, and where the appellate court finds reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Miller* [*v. Westport Ins. Corp.*], 288 Kan. [27] at 32 [, 200 P.3d 419 (2009)]. When material facts are uncontroverted, as they are in this case, an appellate court reviews summary judgment de novo. *Troutman v. Curtis*, 286 Kan. 452, Syl. ¶ 1, 185 P.3d 930 (2008); *Klein v. Oppenheimer & Co.*, 281 Kan. 330, Syl. ¶ 7, 130 P.3d 569 (2006)." *Adams v. Board of Sedgwick County Comm'rs*, 289 Kan. 577, 584, 214 P.3d 1173 (2009).

We also are required to interpret and apply K.S.A. 60-1110 to undisputed facts. When engaging in statutory interpretation we exercise unlimited review. *Redd v. Kansas Truck Center*, 291 Kan. 176, 187, 239 P.3d 66 (2010).

5

*Discussion*

A mechanic's lien is purely a statutory creation and, to create an enforceable lien, the requirements of the statute must be followed strictly. *Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 259 Kan. 166, 170, 910 P.2d 839 (1996). K.S.A. 60-1102(a) and 60-1103(a) prescribe the requirements for an unpaid supplier to perfect a lien against the real estate where the materials were used.

The Kansas mechanic's lien law is remedial, providing effective security to anyone furnishing labor, equipment, material, or supplies used or consumed for the improvement of real property under a contract with the owner. The theory behind granting a lien against the property is that the property benefitting from the improvement should be charged with payment for the labor, equipment, material, or supplies used in the improvement. *Haz-Mat Response, Inc.*, 259 Kan. at 170.

Since the facts are undisputed, the arguments raised by Puetz and Wagner center on K.S.A. 60-1110, which provides:

> "The contractor or owner may execute a bond to the state of Kansas for the use of all persons in whose favor liens might accrue by virtue of this act, conditioned for the payment of all claims which might be the basis of liens in a sum not less than the contract price, or to any person claiming a lien which is disputed by the owner or contractor, conditioned for the payment of such claim in the amount thereof. Any such bond shall have good and sufficient sureties, be approved by a judge of the district court and filed with the clerk of the district court. When bond is approved and filed, no lien for the labor, equipment, material or supplies under contract, or claim described or referred to in the bond shall attach under this act, and if when such bond is filed liens have already been filed, such liens are discharged. Suit may be brought on such bond by any person interested but no such suit shall name as defendant any person who is neither a principal or surety on such bond, nor contractually liable for the payment of the claim."

6

Puetz maintains that when it filed the approved bond, its defense against the defectively filed lien merely migrated over to become a defense against the claim by Wagner against the bond. As Puetz sees it, any other interpretation would act to cure the errors Wagner made in filing its lien, and K.S.A. 60-1110 was not intended to improve the position of a party who had attempted, but failed, to file an effective lien. Wagner, however, contends the statute specifically discharged the lien when the approved bond was filed, and with the lien went any arguments about its validity. Both Puetz and Wagner insist the statute is absolutely clear in support of their opposite interpretations.

We considered the requirements for claims against a statutory lien bond in *Murphree v. Trinity Universal Ins. Co.*, 176 Kan. 290, 269 P.2d 1025 (1954). The issue was whether claims could be made against the contractor's statutory bond for materials and labor that were not provided to the contractor or a subcontractor, but were directly requested by and furnished to the owner. We held those who carried out their transactions directly with the owner had no claim against the contractor's bond. 176 Kan. at 294. We also discussed the nature of the statutory bond and observed:

> "[W]hen the bond is filed a claimant is not required to file a lien statement in order to preserve his rights—he may then look to the bond for recovery—but other than this the bond effects no change in the rights and relations of the parties. A claimant can recover on the bond only if in its absence he could have perfected and enforced a lien." 176 Kan. at 294.

We again took up a question on the right to claim against a statutory lien bond in *Bob Eldridge Constr. Co., Inc. v. Pioneer Materials, Inc.*, 235 Kan. 599, 684 P.2d 355 (1984). The facts in *Eldridge* bear many similarities to those in the present case and both parties have given it substantial attention.

*The Bob Eldridge Construction case*

Bob Eldridge Construction Company, Inc. (Eldridge), was a general contractor building two apartment buildings for the elderly in Haysville and Wichita. Eldridge subcontracted its drywall work on the project to R & S Construction Company (R & S). Pioneer Materials, Inc. (Pioneer), supplied all drywall for the two buildings, under an arrangement by which Eldridge and R & S would call to place orders as they were needed. R & S left the projects with the work under its subcontract unfinished. After that, Pioneer supplied materials directly to Eldridge, and R & S later sought bankruptcy relief.

Pioneer remained unpaid, in part because of a dispute over manufacturing defects in the drywall. Pioneer moved to protect its interest by filing lien statements against both apartment buildings for the amounts due on its unpaid invoices. Eldridge, as principal, and Fireman's Fund, as surety, filed bonds to discharge Pioneer's liens. Over a year later, Eldridge sued Pioneer and United States Gypsum Company for damages it claimed arose from the defective drywall used in the projects. In response, Pioneer asserted its claim against the bonds for the sum it was owed. At trial, Eldridge argued that Pioneer had failed to perfect its liens. The trial court found, however, that since the bond discharged the liens, Pioneer was not required to prove perfection, and it entered judgment in favor of Pioneer for recovery from the bonds for the amount it claimed. Eldridge and Fireman's Fund appealed.

On appeal, Eldridge argued the trial court should not have relieved Pioneer of the obligation to show it had perfected its liens. Eldridge contended Pioneer had failed to comply with all the statutory lien requirements, including falling short on the obligations to provide a reasonably itemized statement, an authorized verification, and proof the materials were used in the projects. Overall, Eldridge claimed Pioneer's liens suffered from ten errors, which Pioneer claimed was irrelevant, since it had not acted to foreclose

8

its liens against the real estate, but had made a claim against the bonds. We framed the issue and our holding in this way:

> "[T]he appellee still has the burden to show it *could* have perfected its liens. The issue before the court is to what extent the appellee must show it could have perfected its liens. We hold the rule is as stated in *Murphree* that 'when the bond is filed a claimant is not required to file a lien statement in order to preserve his rights—he may then look to the bond for recovery . . . .' [*Murphree*,] 176 Kan. at 294. This means when the bond is filed the statutory requirements of the lien, such as the filing of a lien statement, need not be complied with and are waived. The only requirement to recover the bond money is to prove the material or labor was supplied by the claimant and was used in the improvement of the real property which was the subject of the lien. The case then shifts from a showing that each statutory lien element was fulfilled to a showing that the claimant has a right to the bond. See 57 C.J.S., Mechanics' Liens § 233, p. 806. The posting of a bond also eliminates the need for the strict construction rule we adhered to in mechanics' lien cases since the lien is thereby eliminated." 235 Kan. at 604.

*The 2005 Amendments to K.S.A. 60-1110*

At the core of the present case is the impact of the 2005 amendments to K.S.A. 60-1110. Puetz asserts the amendments dictate a different result than the one reached in *Eldridge*, pre-amendment, while Wagner argues there is nothing in the amendments that would cause *Eldridge* to be reconsidered. The 2005 amendments to K.S.A. 60-1110 are shown, in context, in italics:

> "The contractor or owner may execute a bond to the state of Kansas for the use of all persons in whose favor liens might accrue by virtue of this act, conditioned for the payment of all claims which might be the basis of liens in a sum not less than the contract price, *or to any person claiming a lien which is disputed by the owner or contractor, conditioned for the payment of such claim in the amount thereof. Any such bond shall have* good and sufficient sureties, be approved by a judge of the district court and filed

9

with the clerk of the district court. When bond is approved and filed, no lien *for the labor, equipment, material or supplies under contract, or claim described or referred to in the bond* shall attach under this act, and if when such bond is filed liens have already been filed, such liens are discharged. Suit may be brought on such bond by any person interested *but no such suit shall name as defendant any person who is neither a principal or surety on such bond, nor contractually liable for the payment of the claim.*"

Puetz' specific argument focuses on the phrase added to the first sentence—"a lien which is disputed by the owner or contractor"—which it sees as a new tool to remove the encumbrance of a disputed lien from the real estate while preserving any defenses to the lien that had been available to the owner or contractor. Puetz contends the entire lien dispute, with all claims and defenses, remains as it was, but the arguments are worked out with the bond, rather than the real estate, as security for the claim. Puetz forwards its interpretation as the only one that leaves the parties in the same relative posture as before the bond filing.

Wagner contends the principal feature of the amendments was an additional option for owners and contractors. Instead of having to take the expensive step of posting a bond in the amount of the entire contract price just to remove the lien of a single contractor, the discharge of that disputed lien can be gained through a bond equal to that claim alone. Wagner argues there is significance in the fact that the amended statute prevents unfiled liens from attaching to the real estate and discharges any liens that already had been filed, but does so without any language limiting the discharge of liens only to those that had been statutorily perfected.

Our procedure for interpreting statutes is familiar:

"'"An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain

10

and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history or other background considerations to construe the legislature's intent. [Citations omitted.]"'" *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

There is no reason in this case to engage in statutory construction, since the language of K.S.A. 60-1110, as amended, created no confusion or ambiguity. As Wagner suggests, the 2005 amendment provided an alternative, less costly way for an owner to free the project property from a lien, whether to facilitate a sale or financial restructuring, or to allow some other action that would be hindered by the presence of a lien filed against the property. With the filing of an approved bond, the lien is discharged and the focus shifts from the satisfaction of each statutory element required for the lien, to the ability of the claimant to prove the basis for its claim against the bond.

Puetz chooses to isolate the "lien which is disputed" phrase to construct its argument, declaring that "[w]hen this Court decided *Eldridge*, the legislature had not provided for the situation of a disputed lien." If that were true, K.S.A. 60-1110 would have been inapplicable to the facts presented in *Eldridge*, since the contractor actively disputed the liens that had been filed, claiming numerous statutory defects it argued would have prevented perfection. Puetz attributes the outcome in *Eldridge* to treatment of the bonds as if they were general obligation or performance bonds, which necessarily led to the finding that perfection was not required. That interpretation of *Eldridge* is unsupported.

Before 2005, the structure of K.S.A. 60-1110 clearly contemplated disputed liens, and the extensive exercise in statutory construction offered up by Puetz is contrary to our established principle that we should not read into a statute something that is not readily

found in it. We next need to decide whether that affects our holding in *Eldridge*, given the facts before us.

As a preliminary matter, we note that the claim, not the statutory lien, is the fundamental interest to be considered. The claim—someone provided labor, equipment, materials, or supplies pursuant to an agreement and the value was not paid—with the ability to prove those elements, is indispensable. Without a claim, a mechanic's lien fails at the outset. The mechanic's lien is a remedial device, existing only by virtue of statute, by which a contractor, subcontractor, or supplier can obtain some security to improve the chances its claim will be paid. See *Haz-Mat Response, Inc.*, 259 Kan. at 170. Failure to use that device, or failure to use it effectively by not following the statute's directions for procedure and form, does not extinguish the claim. The lien is no more than a means available to try to collect on the claim.

That basic relationship of the claim to the lien is at the heart of the question before us. When K.S.A. 60-1110 states "if when such bond is filed liens have already been filed, such liens are discharged," we must give those words their ordinary meanings, without reading new provisions into the statute. That standard precludes recasting the phrase to read "liens have already been filed *and perfected*." Also, as the Court of Appeals panel observed, the ordinary meaning attached to a lien being "discharged" is incompatible with the idea that the lien is at the same time preserved so it can be "transferred" to a bond along with any lien defenses.

The structure of the statutory lien remedy is also inconsistent with Puetz' "preserve and transfer" theory. Failure of perfection because of technical errors, the defense that Puetz wants to preserve against Wagner's claim against the bond, is a concept associated with a mechanic's lien, not a claim against a bond. In a real estate foreclosure of a mechanic's lien, that lack of perfection may defeat the attempt to collect the unpaid claim

12

from the property. But when the statutory lien is discharged, fulfillment of the statutory requirements to perfect that lien loses relevance. As we recognized in *Eldridge*, there are no corresponding technical requirements to perfect a claim against the bond.

There are, however, *substantive* requirements that must be met to show a creditor is entitled to recover from the bond. In *Eldridge*, we held that, even though the unpaid party was relieved of the statutory requirements with the filing of the bond, the claimant still bore the burden of showing "it *could* have perfected its liens." *Eldridge*, 235 Kan. at 604. That phrasing did not resurrect the ten errors in Pioneer's lien filings that Eldridge claimed were improperly disregarded by the trial court. Instead, we adopted the rule from *Murphree* to define the extent to which a claimant must prove a lien "could" have been perfected, and clarified that "the statutory requirements of the lien, such as the filing of a lien statement, need not be complied with and are waived." 235 Kan. at 604. After the bond is filed, the claim, not the statutory lien, is the focus and, we held "[t]he only requirement to recover the bond money is to prove the material or labor was supplied by the claimant and was used in the improvement of the real property which was the subject of the lien." 235 Kan. at 604.

The 2005 amendments that added the procedure for smaller, more narrowly-directed bonds to release liens did nothing to change the relationship between claims and liens, and a perfection defense continues to be relevant only against an asserted statutory lien. And, contrary to Puetz' argument, the amendments do not require a departure from the reasoning or holdings in *Eldridge*.

*Terms of the bond*

Finally, we look to the terms of the bond itself, as the approved, statutorily-based commitment that Puetz and United filed, and against which Wagner now asserts its claim.

13

As permitted by the post-2005 version of K.S.A. 60-1110, the stated purpose of the bond was release of the single lien filed by Wagner, and the bond amount matched the total of Wagner's claim. The bond bound the parties to the following:

> "[T]he condition of this obligation is such that if the lien claimant shall be finally *adjudged to be entitled to recover upon the claim upon which lien is based*, the Principals or its Surety shall pay to such claimant the amount of the judgment." (Emphasis added.)

Payment of Wagner's claim against the bond, by its own terms, depends not on satisfaction of the perfection requirements under the lien statute, but on the ability to prove the elements of the underlying interest—the claim.

*Conclusion*

The parties do not dispute the elements necessary to support Wagner's claim against the bond: materials were supplied to a subcontractor, Dynamic, pursuant to an agreement; the materials were used in the project; the materials were valued at $108,162.97; and Wagner was not paid for the materials.

The decision of the Court of Appeals reversing the district court is affirmed, the order of the district court granting summary judgment to Puetz is reversed, and the case is remanded to the district court for entry of summary judgment in favor of Wagner.

ROSEN, J., not participating.
DAVID L. STUTZMAN, Senior Judge, assigned.[1]

_____

**[1]REPORTER'S NOTE**: Senior Judge Stutzman was appointed to hear case No. 113,037 vice Justice Rosen under the authority vested in the Supreme Court by K.S.A. 20-2616.

14